277 So.2d 728 (1973)
Rosalie C. JEMISON, wife of and Edward F. Jemison
v.
CITY OF KENNER.
No. 5359.
Court of Appeal of Louisiana, Fourth Circuit.
May 1, 1973.
Rehearing Denied June 5, 1973.
*729 Alvin Rudy Eason, Metairie, for plaintiffs-appellants.
Trombatore & Vondenstein, H. A. Vondenstein, Kenner, for defendant-appellee.
Before REDMANN, GULOTTA and SCHOTT, JJ.
GULOTTA, Judge.
A mandatory injunction is sought to compel the Kenner Board of Aldermen to rezone the southeast corner of West Metairie Avenue and Roosevelt Boulevard from R-1 Residential to B-2 Commercial for the construction of a service station.
From a judgment of dismissal, plaintiffs appeal. It is plaintiffs' contention that the property is located at the corner of two major divided thoroughfares; and because of the high intensity traffic, it is not now suitable for its present zoning. They point out that the northwest[1] corner of the intersection is occupied by a service station, and the denial of requested change, under the circumstances, is arbitrary and capricious.
We agree. The test of whether an elected official's acts are capricious and arbitrary is whether the action taken is reasonable under the circumstances. That is, was the action taken without reason? According to Black's Law Dictionary, the word "arbitrary" is defined, among other things, as "not done or acting according to reason or judgment." The same definition is used in 6 C.J.S. at page 145. Further, in the case of Steadman v. Pearl Assurance Company, 167 So.2d 527 (La.App. 4th Cir. 1964), the court, in concluding that the defendant insurer's failure to pay an insurance loss was arbitrary and capricious, defined those words as follows:
"* * * The words arbitrary and capricious are practically synonymous and mean without reasonable cause and do not necessarily imply an opprobrious connotation. Arbitrary action is based upon one's will and usually implies an abuse of one's authority or power. * * *"
Also, in Torrance v. Caddo Parish Police Jury, 119 So.2d 617 (La.App. 2nd Cir. 1960), involving a suit wherein the resolution of a police jury is questioned as being arbitrary and capricious, the court, in concluding that the police jury did not abuse its discretion, in its opinion on page 619 defined a capricious conclusion as "a conclusion contrary to substantiated competent evidence."
In the instant case, the record consists of the testimony of Louis C. Bisso, a zoning expert, and Duane Crump, the Zoning Director of the City of Kenner, as well as that of Kenner Mayor, Joseph S. Yenni, Thomas LeBlanc, Keith Woodward, and Larry J. Hooper, all members of the Board of Aldermen of the City of Kenner.
Bisso testified he would not have zoned the four corners of the intersection "single family residential". He suggests because of heavy vehicular traffic, the property is more suitable for high intensity land use. Moreover, Bisso claims the balance of the intersection has been "torn off" since one corner is now commercial. A rezoning as requested would reestablish this balance. He concluded that the other three remaining corners should have the same "high intensity land use" zoning as the present northwest corner. In his words, the intersection will not be "at rest" until balanced.
*730 Crump testified that a comprehensive zoning ordinance was adopted in December, 1969. He also recommended the instant property, as well as the other corners of the intersection, be rezoned. His recommendation included a change to "B-2" as one of several alternatives.
Kenner Mayor Yenni opposed the requested change because of the expressed opposition of interested property owners at the time he was campaigning for election.
The aldermen stated that they voted against the zoning reclassification because a comprehensive zoning study was being made and because of the character of the neighborhood, as well as because of the voiced oppositions to the change by the residents of the neighborhood. Thomas LeBlanc additionally stated he was of the opinion there was an overabundance of commercial property in Kenner.
We are not impressed by the expressed statements of the aldermen that their vote was influenced by the anticipated zoning classification study. This application had been pending for eleven months before the enactment of the 1969 Zoning Ordinance.[2] The Board could have deferred action[3] until the present study[4] was completed rather than deny the application.
We are convinced from the testimony of the aldermen that the Board substantially based its decision denying the rezoning classification request on the objections voiced by some of the voters residing in the area.
This cannot be the basis upon which public officials are called upon to act. While we do not suggest the expression of interests of the electorate be disregarded, nevertheless, an elected official cannot reach a result consistent with the understandable self-serving wishes of some of the electorate in utter disregard of valid sound reasons to the contrary and successfully meet the test of reasonableness. Under the circumstances in the instant case, the denial, in our opinion, is unreasonable and, therefore, capricious and arbitrary.
Accordingly, it is ordered that the judgment denying the mandatory injunction be reversed and set aside. It is now ordered that a mandatory injunction issue directed to the City of Kenner through its elected officials, agents, and employees to forthwith rezone and reclassify the immovable property owned by plaintiffs designated as lots 20, 21, 22, 23, in square 44 of the Morningside Park Subdivision, Kenner, Louisiana, and forming the southeast corner of the intersection of West Metairie Avenue and Roosevelt Boulevard from R-1 Residential to B-2 Commercial.
Reversed and rendered.
SCHOTT, J., dissents with written reasons.
SCHOTT, Judge (dissenting).
The plaintiffs' case consisted of the testimony of Louis C. Bisso, an expert in zoning, and Duane Crump, the defendant's director of regulatory inspections.
It was Mr. Crump's official duty to make a report to the Kenner Zoning Commission to assist them in their disposition of plaintiffs' application. That report recommended that plaintiffs' application be granted primarily because the northwest corner of the intersection had been classified B-2.
At the hearing before the Board of Aldermen of the defendant, Mr. Crump's recommendation was received and discussed but the Aldermen unanimously voted to deny the application.
*731 The minutes of the meeting of the Board of Aldermen reflect that the Mayor of the City recommended against rezoning, stating that during his recent campaign for his office he had received many complaints regarding spot zoning; that he had been a member of the Council which had acted upon the rezoning of the northwest corner in 1967 and had voted against that application because he considered it to be spot zoning. This view was also expressed by one of the Aldermen at the meeting. The record shows that there is a residence at the northeast corner and that the area surrounding the entire intersection is developed in residences.
In addition to the Mayor, three out of the five Aldermen who voted against plaintiffs' application testified at the trial on March 22, 1971. They were opposed to the reclassification because they had ascertained that the residents in the area were opposed to the reclassification and that a comprehensive zoning study of the entire City, including this area, was in progress.[1]
In dismissing plaintiffs' suit, the trial judge gave written reasons to the effect that plaintiffs did not bear their burden of proof to show that the defendant was arbitrary, capricious or discriminatory. He found that the crux of the plaintiffs' case was the testimony of Mr. Bisso showing that there might be some question as to whether a residential classification is the best use to which the property can be put but not showing that the City's action under its zoning ordinance is arbitrary or capricious. I agree with the trial judge.
An analysis of Mr. Bisso's testimony shows that he was unequivocal in his opinion that the subject property was not suitable for the R-1 classification but that the nature of the intersection warranted use for "either multiple apartment or commercial." In answer to the question of whether the subject property should be commercial he replied that "I can't answer that with yes or no."
In Mr. Crump's report he says "that this intersection is not suitable for single family development and to leave it single family effectively takes it out of commerce."
The zoning ordinance introduced at the trial and in effect at the time contains several classifications between R-1, single family Residential, and B-2, Community Shopping. They are R-2, two family Residential, R-3, multi-family Residential, and B-1, Neighborhood Shopping District. A filling station is not permitted in any of the other mentioned classifications, so that for the plaintiffs to prevail they must show that the defendant was arbitrary not only in refusing to change the zoning from R-1 but also in refusing to change the zoning to B-2. Providing plaintiffs with the best possible interpretation of Mr. Bisso's testimony, it may be unreasonable to insist that plaintiffs' property remain R-1, but his testimony does not support the proposition that defendant's action in refusing to change the classification to B-2, which is the only relief sought by plaintiffs, was arbitrary or unreasonable. The majority view overlooks this aspect of the case.
Mr. Bisso's opinions were influenced primarily by the fact that the other filling station was already located on the northwest corner causing the intersection to be "not at rest" and off balance. "If it had been at rest," he said, "we wouldn't be in court today." This might be considered moot in view of the fact that the new comprehensive zoning ordinance classifies all four corners as R-1. But what is more important, the Bisso emphasis on the presence of the other filling station which is shared by Mr. Crump begs the question of whether the B-2 classification was appropriate for the northwest corner in the first *732 instance. There is testimony in the record to suggest that the reclassification of the northwest corner in 1967 was inappropriate. If that is the case, how can it be said that the condition should now be aggravated especially considering the objection of the neighboring residents? The view taken by my colleagues seems to be that even if it was not proper for the first filling station to be authorized on the northwest corner of this very wide intersection, since it was done it would now be arbitrary and unreasonable for the governing body to decide not to enlarge upon and compound the previous mistake in judgment.
I strongly disagree with my colleagues in their treatment of the Aldermen's concern for the wishes of the residents in the area. The zoning ordinance in effect at the time of the trial states that its purpose is to promote public health, safety, morals, convenience, order, prosperity and general welfare of the community. This thought is expounded upon in detail. The language of the ordinance is similar to that of LSA-R.S. 33:4723, which provides for the purpose of such zoning regulations.
The majority hold that the concern of the three Aldermen and the Mayor with the wishes of the persons residing in the neighborhood constituted political motivation and was not a proper basis for defendant's action. From the plain wording of the ordinance, as well as the statute referred to above, it was certainly proper for the defendant to consider the question of what the residents in the neighborhood thought about the proposal since they are in a position to have some knowledge as to the effect such a change might have on the general welfare of their neighborhood. Furthermore, the procedure outlined in the ordinance for processing a change in zoning classification includes a public hearing at which interested citizens shall have an opportunity to be heard.
It can hardly be said that the opinions of these individuals should be ignored simply because the plaintiffs have presented one expert witness who does not share their opinion or who perhaps might not see the problem in the same light as they do.
In considering whether the defendant acted arbitrarily and unreasonably in denying plaintiffs' application, the burden is placed squarely upon the plaintiffs to prove the proposition. State v. City Planning & Zoning Com'n, 59 So.2d 832 (La. Orleans App. 1952). After an analysis of the record in this case I do not believe that plaintiffs have borne that burden.
Accordingly, I respectfully dissent.
NOTES
[1] This service station was constructed after obtaining a reclassification from R-1 to B-2 in 1967 or 1968. Plaintiff applied for a similar reclassification in January, 1969. We are informed by counsel that the most recent zoning ordinance classifies this service station property as R-1, but the station presumably continues in a nonconforming status.
[2] Request for rezoning classification, January 1, 1969; Comprehensive Zoning Ordinance No. 1161 adopted December, 1969.
[3] Hearing conducted March 22, 1971.
[4] Comprehensive Zoning Ordinance No. 1374 adopted February 14, 1972.
[1] A comprehensive zoning ordinance adopted February 14, 1972, was filed in this Court on February 20, 1973, classifying the subject property along with the other three corners as R-1. Judicial notice is taken of this ordinance pursuant to LSA-R.S. 13:3712.