357 So.2d 1299 (1978)
TRUSTEES UNDER the WILL of Annie Burges POMEROY, Plaintiffs-Appellants,
v.
TOWN OF WESTLAKE et al., Defendants-Appellees.
No. 6425.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1978.
*1300 Anderson, Leithead, Scott, Boudreau & Savoy, by Everett R. Scott, Jr., Lake Charles, for plaintiffs-appellants.
John S. Hood, Lake Charles, for defendants-appellees.
Before WATSON, GUIDRY and FORET, JJ.
WATSON, Judge.
Plaintiffs, trustees under the will of Annie Burges Pomeroy, deceased, are asking a writ of mandamus directing defendants, the Town of Westlake, its Mayor and Board of Aldermen, to reclassify a six-acre tract of land from R-2, single family residential, to I-1, light industrial. The property lies just north of the I-10 Calcasieu River bridge and is approximately 500 feet square. It is bounded on the north by the Kansas City Southern railroad tracks; on the south by the Southern Pacific tracks; and on the east by the Calcasieu River. Plaintiffs alleged in their petition and defendants admitted in their answer that the Calcasieu River is a navigable stream.
The trial court denied the application for the writ of mandamus. The trial court concluded that the trustees had not carried the burden of proving the town acted unreasonably in denying the zoning change. The trial court stated that the Pomeroy property ". . . has some desirability for residential purposes. . . . ." (TR. 81). The trustees have appealed. Exhibit PD-2 graphically illustrates the location of the Pomeroy tract and other zoning in the area as established by the comprehensive zoning ordinance of the Town of Westlake of 1968. PD-2 uses various colors to indicate zoning differences and is therefore unsuitable for reproduction here. The attached plat (Figure 1) was prepared by the court to approximate PD-2.
*1301 
*1302 The testimony in the trial court may be summarized as follows:
James A. Leithead, one of the trustees, testified that Mrs. Pomeroy died October 24, 1954 and a dwelling which was on the property at that time was moved in 1960. The trustees rented the house periodically between 1954 and 1960 but the tenants were bothered by transients. The lot is now vacant and unimproved. Immediately adjacent to the property on the south are seven menhaden fish oil storage tanks which are located on the railroad right of way. Leithead testified that the only firm offer to purchase the property since 1954 has been a recent one conditioned on the property being rezoned. Leithead testified that no residences have been constructed near the Pomeroy property in fifteen years. The Westlake building inspector advised him residences could not be constructed in an area zoned for light industry. A Mr. Kilpatrick from Monroe now has an option to purchase the property for light industrial use at a price of $204,000. Kilpatrick leased the property and used it for a shell pile in May of 1976. According to Leithead, the trustees were not aware the then vacant property had been zoned residential when the zoning plan was adopted in 1968.
Charles Jones testified as an expert appraiser of Westlake property that residential development of the Pomeroy property is not feasible; no residences have been built in the area for many years. Jones said the smell is very bad when the menhaden tanks are being loaded or unloaded. Although there are frame residences north of the property in what is termed the Riverside Subdivision, the area where these are located is zoned for light industry.
William B. Coleman, a licensed real estate appraiser, testified that the area west of the property along Westlake Avenue is zoned for multi-family dwellings. There are three structures used for commercial purposes in violation of that zoning and several vacant lots. Miller Avenue, which is further west of the property and zoned commercial, has a mixture of residential, light industrial and commercial uses. According to Coleman, the only zoning that would permit the Pomeroy property to be put to its highest and best use would be light industrial. All other waterfront property in the Town of Westlake is zoned for light or heavy industry.
Francis Rodrigue, a member of the Westlake Zoning Commission for six years testified that he had no personal knowledge of why the Pomeroy tract was not initially zoned for light industry like the property on the north and south sides. Rodrigue identified D-2, a letter he wrote to the Mayor and Board of Aldermen advising them that the zoning commission voted unanimously against rezoning the Pomeroy property from residential to light industrial use. D-2 states among other reasons that the request was denied because 17 residents of the adjacent area opposed it and:
" * * *
3. The Zoning Commission realizes that the riverfront property may eventually become industrial, but, for now, it was felt that present residents in the nearby areas must be protected by not rezoning any more property industrial than is already in this classification." (TR. 76).
The Westlake zoning district regulations allow all uses in a light industrial classification:
". . . except Junk Yards & all uses which may be obnoxious or offensive by reason of emission of dust, smoke, odor, gas, excessive glare, light noise, or vibration plus all similar heavy industrial uses." (TR. 34).
A certificate of zoning compliance must be secured before a building permit can be obtained. (TR. 25).
Marilyn Johnson, owner of a residence on Westlake Avenue directly across the street from the Pomeroy property, testified that Westlake did not need any further sources of fumes, odors, dust or smoke. Frankie Mitchell, also a resident of Westlake Avenue, testified that the occupants of the area are retired people on fixed incomes; he is opposed to the rezoning because he would like to keep the area residential. Mrs. O. J. Fall, a resident of Westlake Avenue in an *1303 area zoned for light industry, testified that she is against rezoning the Pomeroy property although she believes it impossible to build a new residence where she lives because of its industrial zoning. James Floyd Kelly, Dean Fuller and Barry C. Naff also testified in opposition to the rezoning. These six area residents testified that the shell pile on the property in May of 1976 was a terrible nuisance because of traffic noise, dust and odor.
Junius Joseph Champeaux, II, an architect and city planner, said that the residences in the area of the Pomeroy property are deteriorating and the Pomeroy tract is unsuited for residential development. Champeaux described the zoning here as spot zoning in reverse.
Plaintiffs allege in their petition that the refusal of the Board of Aldermen to reclassify the subject property ". . . constitutes such discrimination as to constitute an unlawful deprivation of the right to use the property and denies equal protection under the law."
The issue is whether the Town of Westlake was arbitrary, unreasonable and discriminatory in rejecting the application to rezone the Pomeroy property.
The test of whether governmental action in a zoning case is arbitrary is "whether the action taken is reasonable". Jemison v. City of Kenner, 277 So.2d 728 at 729 (La.App. 4 Cir. 1973); writ denied, 281 So.2d 753 (La., 1973). The action is arbitrary when it is "without reasonable cause" or involves an "abuse of . . . authority and power." Id.
The burden is on one seeking to overturn the action of a zoning authority to establish an unreasonable and arbitrary exercise of police power without any substantial relationship to the general welfare. Hardy v. Mayor and Bd. of Aldermen, etc., 348 So.2d 143 (La.App. 3 Cir. 1977) writ denied, 350 So.2d 1212 (La., 1977). However, an island of land cannot be zoned in one classification in the midst of a large area of property with a different classification when no rational basis exists for the distinction. Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La., 1975).
Spot zoning is the practice of giving a small parcel of land a different classification from the surrounding area for the benefit of the owners of the small parcel. Cook v. Metropolitan Shreveport Bd. of App., 339 So.2d 1225 (La.App. 2 Cir. 1976); writ denied, 341 So.2d 1123 (La., 1977). Here, a small parcel of land is classified differently from neighboring property for the benefit of the neighbors to the detriment of the owners of the parcel. The opposition of the nearby residents to further development is understandable. Carlo Ditta, Inc. v. Parish of Jefferson, 315 So.2d 361 (La.App. 4 Cir. 1975) writs denied, 320 So.2d 559 and 560 (La., 1975). However, none of the neighboring property owners reside in a single family residential zone. The area across Westlake Avenue zoned for multiple family use has nonconforming commercial businesses. While the Pomeroy property serves as a buffer zone of peace and quiet for its neighbors, it does so at the expense of the owners.
The trial court concluded that the Pomeroy property has residential possibilities but this was erroneous. The evidence shows that the Pomeroy property is completely unsuited for residential development. While there are residences nearby, none have been built within the past 15 years. There is some evidence that building permits for new residences in the adjoining area could not be obtained. While the highest and best use of a tract of land is not decisive in a zoning case, it is a relevant factor to be considered. Here, the highest and best use, in fact, the only feasible use of the Pomeroy property, is for industrial purposes. This is the only section of the river bank in the Town of Westlake with a residential zoning. This fact alone indicates that the failure to rezone is arbitrary. The residential classification of the Pomeroy property is a discriminatory one which renders it virtually useless to its owners.
*1304 In Parish of Jefferson v. Universal Fleeting Company, 234 So.2d 88 (La.App. 4 Cir. 1970) restricting waterfront property to single family residential use was found to be contrary to articles 455 and 457 of the Louisiana Civil Code. That case involved batture property subject to flooding rather than a river bank. However, in both instances, the action of the zoning authority prevented any actual use of the property. The Pomeroy property was vacant at the time the Westlake zoning ordinance was passed and the ordinance deprived the owners of any reasonable opportunity for its development.
The evidence shows that there must have been a mistake in the original zoning, since nothing distinguishes the Pomeroy property from the light industrial property on the north and south. Dufau v. Parish of Jefferson, 200 So.2d 335 (La.App. 4 Cir. 1967).
An unconstitutional taking of private property does not result merely because the owner is unable to develop it to its maximum economic potential. However, the effect of an ordinance may be so oppressive to a property owner in a given instance that it constitutes a confiscation. Maher v. City of New Orleans, 516 F.2d 1051 (U.S. 5 Cir. 1975) cert. den., 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830. Zoning action which deprives an owner of all practical use of his property without expropriation and compensation is unconstitutional. MacGibbon v. Board of Appeals of Duxbury, 356 Mass. 635, 255 N.E.2d 347 (1970).
The zoning here is patently discriminatory since it does not conform to that in the surrounding area. Compare William Murray Bldrs., Inc. v. City of Jacksonville, 254 So.2d 364 (Fla.App. 1 Dist. 1971). The zoning of the Pomeroy tract is apparently based solely on the aesthetic benefit to the neighbors of having it remain vacant. This purpose cannot be served without depriving the owners of the use of the property. The owners cannot be effectively deprived of its usefulness without just compensation under the Constitution of the United States and art. 1, § 4 of the Louisiana Constitution of 1974.[1]
Decree[2]
For the foregoing reasons, it is ordered that the judgment of the trial court denying the mandatory injunction is reversed. It is now ordered that a mandatory injunction issue directed to the Town of Westlake, through its Mayor and Aldermen, to reclassify the Pomeroy tract from R-2, single family residential, to I-1, light industrial, said property being more fully described as follows:
Part of Lot 4 of Section 3, Township 9 South, Range 9 West, Calcasieu Parish, Louisiana, bounded on the North by Kansas City Southern Railroad, on the East by Calcasieu River, on the South by Louisiana Western Railroad (now known as Southern Pacific Railroad) and on the West by Westlake Avenue; all being located in the Town of Westlake, Louisiana.
*1305 All costs insofar as allowed by law are assessed against defendant, the Town of Westlake.
REVERSED AND RENDERED.
NOTES
[1] Louisiana Constitution of 1974, art. 1, § 4:

"§ 4. Right to Property
Section 4. Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss. No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction. Personal effects, other than contraband, shall never be taken.
This Section shall not apply to appropriation of property necessary for levee and levee drainage purposes."
[2] Decree in accord with Jemison v. City of Kenner, supra.