381 So.2d 1320 (1980)
Patricia COOGAN, wife of/and William Stephen Lambert
v.
The PARISH OF JEFFERSON.
No. 11007.
Court of Appeal of Louisiana, Fourth Circuit.
March 11, 1980.
Rehearing Denied April 18, 1980.
*1321 Post, Reinhardt & Rougelot, William H. Reinhardt, Jr., Metairie, for plaintiffs-appellees.
James S. Arceneaux, Parish Atty., Warren E. Mouledoux, Jr., Asst. Parish Atty., Gretna, for Parish of Jefferson, defendant-appellant.
Before BOUTALL, SCHOTT and CHEHARDY, JJ.
CHEHARDY, Judge.
Defendant has appealed from a judgment directing the Parish of Jefferson to change the zoning classification of plaintiffs' property from R-3 to C-1 neighborhood commercial.
The irregular shaped property is composed of Lots 23 and 24 of Square 3, Metairie Ridge Nursery bounded by Metairie Road, Narcissus Street, Carrollton Avenue and Dalhia Street. Together the lots measure 90' front on Metairie Road by a depth on Narcissus of 60'8"3'" and a second depth and front on Narcissus Street of 89'2"4'", a width in the rear on the Carrollton Avenue side of 64'9"6'" and a depth on its side line nearest Dahlia Street of 131'5"5'". The property contains 10,794 square feet. On October 25, 1977, Exxon, through plaintiffs' attorney, filed a rezoning application with the Jefferson Parish Council, asking that this property be rezoned from R-3 to C-2. On August 24, 1977, plaintiffs offered to purchase the property from Exxon Corporation subject to the property being rezoned from R-3 to C-2.
On December 27, 1977, a hearing was held by the Planning Director and the Planning Advisory Board. After the hearing, Exxon changed its request for rezoning from C-2 to C-1. Subsequently, the Planning Director recommended against the C-1 zoning change, and the Planning Advisory Board voted for it.
A public hearing was held before the Parish Council on March 18, 1978, with appearances made by plaintiff and representatives of the Forest Hills Civic Association, and the rezoning application was denied. Despite this denial of Exxon's request for the change, plaintiffs purchased the property on August 21, 1978 and filed the present suit on September 6, 1978. Located in the same square with plaintiffs' property is a six-story multimillion dollar building, containing a homestead and other nonconforming commercial-use tenants; an apartment complex; and an adjacent parking area. All of the property in this square is zoned R-3 at present with a substantial portion used as nonconforming commercial.
Directly across from plaintiffs' property is a Shell Service Station, a grocery store, a furniture store, and a number of other commercial establishments, all of which property is zoned C-1.
Forest Hills Subdivision, all of which is zoned R-1, is in the square on the opposite side of Narcissus Street, which forms a boundary of the subdivision and serves as a buffer zone between plaintiffs' property and Forest Hills.
On October 2, 1924, Harry Papworth sold the subject property, with no use restrictions in the sale, to Standard Oil Company of Louisiana. A service station was constructed on the premises and used as such until it was abandoned several years ago. In 1966, the Comprehensive Zoning Ordinance *1322 was adopted, and the subject property, although still used as a service station, was rezoned from C-2 to R-3, along with the remainder of Square 3.
Early in 1972, the property in the same square adjoining the plaintiffs' property was torn down to make way for a new building, which now houses Security Homestead on its first floor and the A & P offices on the upper floors. The Parish permitted this nonconforming commercial use, although the property is zoned R-3.
In May of 1974, the Homeowners Association of Forest Hills petitioned the Council to change all lots in Forest Hills Subdivision which were not zoned R-1 to R-1. The Council granted their request.
The issues before us are whether or not the trial court erred in finding that the denial of the plaintiffs' request for rezoning by the Jefferson Parish Council was unreasonable, arbitrary and capricious and whether or not plaintiffs are parties in interest to the present suit with standing under LSA-C.C.P. 681, to maintain this action.
In the case of Gertler v. City of New Orleans, 346 So.2d 228 (La.App. 4th Cir. 1977), rehearing denied June 7, 1977; writs refused by the Supreme Court of Louisiana, September 23, 1977; regarding the standard of review that an appellate court must adhere to in reviewing the trial court's decision in such a case, the court said at page 239:
"Although, on one hand, we might disagree with the Board's findings and, on the other hand, ascribe no manifest error to those findings of the district judge, we are obliged to sustain the Board's conclusions unless the weight of the evidence in its entirety so strongly preponderates against such conclusions that it compels us to find an abuse of discretion on the part of the Board."
Gertler, supra, refers to a "board" because it concerned an Orleans Parish case where zoning is determined by the Board of Zoning Adjustments. In Jefferson Parish, where the present case originated, the Jefferson Parish Council performs this function. The same standard of review, therefore, must apply to the Council's decisions in these matters.
The plaintiffs in the present case presented several experts who testified regarding the highest and best use of the parcel of the land in question, including William G. Weigand, who was accepted as an expert in the field of real estate appraisals.
In giving his opinion that the highest and best use of this site would be as commercial Weigand testified that the construction of a commercial building at the corner of Narcissus and Metairie Road would not adversely affect the neighborhood surrounding the site; that there is a present and potential market for a commercial building at that spot; and that commercial zoning would be compatible with the existing zoning and usage of this neighborhood.
The testimony of Dennis DeVun, assistant to the Safety Director of Jefferson Parish, establishes that the six-story multimillion dollar building adjoining plaintiffs' property was permitted a nonconforming commercial use of 15,000 square feet on its first floor to replace an old building which only had 10,700 square feet of nonconforming commercial. DeVun testified that in enforcing the zoning ordinance if somebody came in and wanted to extend a commercial use of a piece of property from 10,000 square feet to 15,000 square feet, he would not grant them a permit.
In response to questioning about Security Homestead's permit, DeVun continued:
"Q Why was a permit granted here?
A You'd have to talk to the man who issued the permit, sir.
Q You were ultimately responsible, weren't you?
A Yes, sir, I was responsible for it, that may be true, but I don't issue the permits. That's up to my subordinates to check them out.
Q So that you have a piece of property here that is, in effect, a non-conforming use that your office granted the permit?
*1323 A If it was given and if it exceeds that amount, yes, sir.
* * * * * *
Q Well Mr. DeVun, can you explain why you have a 15,000 square foot non-conforming use when you had a 10,000 square foot non-conforming use?
A No, sir, I can't answer that. I told you that I couldn't answer that.
* * * * * *
Q Mr. DeVun, can you have a homestead in a R-3 zoning?
A No, Sir, you can't.
Q Is there a homestead in this building?
A Yes, sir."
The new building should not have had more square footage than the old building. Considering this allowance by the Parish of an expanded nonconforming commercial use in the same square as plaintiffs' property, coupled with commercially zoned property along the same side of Metairie Road and across the street, we can see why the trial court concluded that the Council had acted in an arbitrary manner.
Mr. Frederick Miller Guice, also accepted as an expert in the field of real estate appraisals, testified that the highest and best use of this property would be under a neighborhood commercial C-1 zoning and that a retail commercial use would not adversely affect the neighborhood.
Perhaps the most persuasive of the plaintiffs' arguments on behalf of the change to C-1 zoning came from Louis C. Bisso, who was accepted as an expert in the zoning field and has been involved in zoning matters for 43 years.
In analysis of the properties along Metairie Road that actually front on Metairie Road, as does the subject property, Bisso said:
"Q So that the only piece of property that is residential that is shown on this map that fronts on Metairie Road is the apartment complex, isn't that correct? The rest of it is used for commercial purposes, isn't it?
A The existing commercial irrespective of zoning, you are correct." (Emphasis ours.)
In discussing the relationship of use of the subject property to the Forest Hills Subdivision, he said:
"Q What's the significance of this street between the subject property and the rear of these residential lots?
A I would say it would act as a tremendous environmental impact barrier to anything that would go on the subject property."
In reference to the Jefferson Parish Planning Department's report, Bisso also said:
"Q Now in that report it is stated that by granting this change that you would bethey would be allowing an intrusion of commercial into an otherwise residential district. Now considering that the homestead office building is, in fact, a commercial use; that across the street is all commercial and that the bulk of the property between Frisco Avenue and the homestead building is commercial, do you believe that to be the case?
A Definitely not. The holding of the property onto Metairie Road commercial on the periphery of the residential unit along the major street, both sides of it in the same generic category, would definitely save illogical extension into a residential area. I do not believe Metairie Road is or could possibly be defined from Avenue A to Frisco as a residential area or residential street."
Regarding the use of the Security Homestead building and the traffic consideration, Bisso said:
"Q Do you find the homestead office building to be the natural boundary for the commercial space here?
A For two reasons. One, that the existing use is already commercial. Whether it is non-conforming legally or illegal is no concern of mine but it *1324 is non-conforming usage and commercial and it balances with the commercial stopping on the other side at Avenue A. It would serve two purposes. And, three, it is in a location where it ought to be, on the periphery of the unit and not in the interior."
In explanation of why this requested change from R-3 to C-1 could not possibly be considered "spot zoning," Bisso said:
"* * * Now coming back to Metairie Road, since the other side is commercial I would call a request or a change of this subject property to commercial would be a natural extension of the commercial that is on one side of the street over to the other side and further down to Avenue A to balance it as I explained it before. Equalize and stabilize. Those are two key words in zoning. So I would definitely not say such a request would not only be spot zoning. I have fought spot zoning my entire life. * * *"
In conclusion, Bisso said both the Security Homestead Building and the subject property should be zoned commercial because:
"* * * It's in a commercial environment; it's on a major street; it has commercial across the street from it; it's in a commercial environment qualitatively and quantitatively the neighborhood can stand more commercial."
The Planning Department through its director, Hugh Ford, recommended denial of the changes from R-3 to C-2 commercial for several reasons which are summed up as follows:
1. An illogical extension of a zoning boundary which will likely lead to residential deterioration and requests for additional zoning of a similar nature thereby expanding the problem.
2. This is spot zoning generally unrelated to either existing zoning or developmental patterns of the area.
3. Approval of this request would extend to the applicant development rights denied to others similarly situated in the same area.
The report to the Council for its consideration failed to show that a neutral ground and a service road is located between Metairie Road and those residences which abut this service road but face into Forest Hills. Bisso points out that this buffer is important. No such road or neutral ground faces plaintiffs' property since it is directly on Metairie Road. This fact was also absent in the report. The Planning Advisory Board recommended denial of C-2 zoning but recommended C-1 commercial zoning for plaintiffs' property observing: "The petitioned property is presently surrounded by commercial uses, therefore, the character of the neighborhood will not be materially and adversely affected by any use permitted in a light commercial zoning classification."
All of the evidence and the record taken in their entirety just do not justify Ford's recommendation to the Jefferson Parish Council which was obviously misled. Despite the recommendations of Ford, the record establishes that the subject property was commercially used from 1924 until its abandonment a few years ago; is in the heart of a congested commercial area; faces a heavily travelled major traffic artery; and has a rear street serving as a buffer zone between it and the houses in Forest Hills. Common sense dictates the inescapable conclusion that since practically all the property in the immediate area is already zoned commercial or used as nonconforming commercial, this change of zoning should not lead to additional requests. Furthermore when we consider that the six-story homestead building, used commercially, separates the subject property from the only property used as R-3 in the square the unreasonableness of refusing the change in the zoning of plaintiffs' property becomes even more apparent.
Reasons 2 and 3 of the Planning Director likewise just do not state the real situation. Actually if there is any spot zoning it is the retention of plaintiffs' property as R-3 in the midst of this heavy commercial area.
Furthermore it is plaintiffs who are being denied developmental rights allowed their neighbors who are using a six-story building *1325 zoned R-3 for a homestead and other nonconforming commercial purposes.
Ford explained that property on which the Security Homestead Building is located was enjoying a legal nonconforming use which is not granted through his office or the Council. He also explained that if the nonconforming use is interrupted by a one-year period, this nonconforming use will end, and the Security Homestead property will be solely designed as R-3. However, this is a totally unrealistic possibility, considering this neighboring property of plaintiffs is a multimillion dollar development.
According to the testimony of Ford, the report said that this requested change could not be considered reasonable regardless of the surrounding circumstances, simply due to the fact the subject property was located in an R-3 zoning district. Under this criteria, he further admitted that any requested change would have to be considered unreasonable. Ford also admitted that his report said that across Metairie Road from the subject property there were 12 single family structures, three two-family structures and a lot containing a single family structure, when, in fact, there are no such structures in that location, only commercial ones. This is another aspect of Ford's report that could have been very misleading to the Council.
Moreover, in regard to calling the proposed change of this property from R-3 to C-1 zoning as "spot zoning," Ford himself admitted that this was bad wording in the report because both he and the other experts agreed that this could not possibly be considered spot zoning. However, this is what the report said, and it was this report that was before the Council when it made the decision to deny the requested change.
In Trustees Under Will, etc. v. Town of Westlake, 357 So.2d 1299, 1303 (La.App. 3d Cir. 1978), writ denied, La., 359 So.2d 205 (1978), the court stated:
"Spot zoning is the practice of giving a small parcel of land a different classification from the surrounding area for the benefit of the owners of the small parcel. Cook v. Metropolitan Shreveport Bd. of App., 339 So.2d 1225 (La.App. 2 Cir. 1976), writ denied, 341 So.2d 1123 (La., 1977). * * *"
This court agrees with all of the experts testifying that the use of the words "spot zoning" in the zoning report was completely erroneous. We also agree with these experts, for their stated reasons, that this change could not even be considered an "illogical" extension of commercial zoning and that the highest and best use of the subject property would be under C-1 designation. In regard to our consideration of this issue, the court said in Trustees, supra, at page 1303:
"* * * While the highest and best use of a tract of land is not decisive in a zoning case, it is a relevant factor to be considered. * * * "(Emphasis ours.)
Although the plaintiff who attacks a zoning decision has a difficult burden of proof to bear, we agree with the trial court that plaintiffs have sustained this burden.
The trial court's overruling of the exception of no cause of action is affirmed. Plaintiffs were the owners of the property at the time the suit was filed in the district court and therefore have that interest in the suit required by LSA-C.C.P. art. 681 which reads:
"Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts."
Considering the evidence and the record in its entirety, the lack of a reasonable basis for the decision of the Council, and the positive arguments put forth by plaintiffs' experts, it is our opinion that the finding of the learned trial judge that the Jefferson Parish Council acted unreasonably, arbitrarily and capriciously in denying plaintiffs' request for a zoning change is proper.
Accordingly, the judgment of the trial court, directing the Parish of Jefferson to change the classification of Lots 23 and 24, Square 3, Metairie Ridge Nursery, in Metairie, Louisiana, to a C-1 commercial zoning classification is affirmed in all respects.
AFFIRMED.
SCHOTT, J., dissented and filed opinion.
*1326 SCHOTT, Judge, dissenting:
The Jefferson Parish Council denied the request for a zoning change on March 18, 1978, and this suit was not filed until September 6, 1978. Although the suit is styled a petition for injunction the action is nevertheless a petition for judicial review under R.S. 33:4727, which provides that such a petition must be presented to the court within 30 days after the filing of the decision in the office of the Board. The parish did not plead an exception of prescription which cannot be supplied by the court. C.C.P. Art. 927. However, I do not believe this is a matter of prescription but instead is either a question of peremption or one of jurisdiction of the district court over the subject matter which may be noticed by this court on our own motion.
In State v. Board of Zon. Adjust of City of New Orleans, La., 197 So.2d 691, this court held that the 30-day limitation was one of peremption and not of prescription, and when the 30 days elapsed plaintiff's cause of action no longer existed and nothing could revive it. The result was a dismissal of plaintiff's action as having perempted because of plaintiff's failure to join two indispensable parties in the suit even though a suit was filed against certain other parties within the 30-day period. The Supreme Court reversed, holding that the two were not indispensable parties. The court concluded that the exception of peremption was improperly sustained because suit had been brought against the proper parties within the time fixed by law. The Supreme Court did not suggest that the limitation was not peremptive but held that peremption did not run in the case because a timely suit was in fact filed.
In Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (1971), the Supreme Court held that an action filed in the district court to review an administrative determination was not a judicial appeal but rather an invocation of original judicial jurisdiction. Discussing the proposition at page 206, the court observed that with or without any provisions for judicial review of administrative determination parties would have the right under the constitution to seek review of such matters in the district court, which is the court of original jurisdiction. So, perhaps it is arguable that the legislature cannot curtail the right of a party to seek judicial review by imposing a 30-day period in which to seek judicial review. On the other hand, the argument becomes absurd because if the 30-day period is not peremptive then no time limit would apply to the filing of such a suit. In the instant case, if plaintiffs' application for judicial review filed six months after the council made its decision was not too late, then neither would a year or two years, or five years, be too late.
LSA-R.S. 33:4721 et seq. presents a statutory scheme for zoning matters which encompasses administrative action followed by timely judicial review. It precludes one from initially filing a suit to accomplish a zoning change without seeking a change administratively. The court's function is limited to review of the administrative decision. Absent a showing that the 30-day limitation on the invocation of judicial review is unreasonable or somehow denies an applicant of procedural due process the applicant must take judicial action within 30 days or forfeit his right to judicial review. If this reasoning is incorrect and an applicant is not precluded from seeking judicial review of an administrative decision when the time limitation passes the administrative decision is never final.
If the 30-day period is one of peremption plaintiffs have no cause of action for judicial review after that delay. This court may notice a failure to state a cause of action. C.C.P. Art. 927. On the other hand, it may be a question of jurisdiction over the subject matter, i. e., the district court has the power to review a zoning determination by the Jefferson Parish Council only within the parameters of R.S. 33:4727. If this be the case, the objection is not waived by the failure of the Parish to object. C.C.P. Art. 925.
In Anderson, American Law of Zoning, § 25.24 at page 252, it is stated:
"The time limitations imposed by statute upon the commencement of proceedings *1327 to review a decision of a board of adjustment are regarded as mandatory. Failure to initiate proceedings within the time limited by statute results in loss of the right of review. A Massachusetts court explained:
`. . . The remedy invoked by the plaintiffs is one created by statute which describes those who are entitled to its benefits, the court in which it may be brought, the nature of the proceedings, and the time in which it must be commenced. In terms too plain for argument, it is not available unless the "appeal is filed in said court within fifteen days after such decision is recorded" in the office of the city clerk. The language is mandatory and does not easily permit any extension of time for any reason. Time is not merely a procedural limitation but is an essential part of the remedy. . . .'
A Maryland court concluded that it had `no power or discretion to allow an appeal not filed within the prescribed time in the face of statutory language requiring an appeal to be taken within a specified time.' . . ."
I would reverse the judgment of the trial court and dismiss plaintiffs' petition.