455 So.2d 1239 (1984)
HIBERNIA NATIONAL BANK IN NEW ORLEANS
v.
CITY OF NEW ORLEANS.
No. CA-1679.
Court of Appeal of Louisiana, Fourth Circuit.
August 31, 1984.
Writ Denied November 9, 1984.
*1240 T. Allen Usry, Usry & Weeks, Metairie, for appellant.
Russ M. Herman, Michael J. Begoun, Herman, Herman & Katz, New Orleans, for appellee.
Before GULOTTA, LOBRANO and ARMSTRONG, JJ.
GULOTTA, Judge.
Hibernia National Bank in New Orleans (hereinafter referred to as the Bank) appeals from the dismissal of its suit seeking to enjoin the City of New Orleans from enforcing an ordinance downgrading the zoning of certain property located in New Orleans East from RM-2 (multiple family residential) to RD-2 (two-family residential). We affirm.
The Bank acquired ownership of three lots in the affected area by foreclosure on January 6, 1983. According to the Bank, the City Council's ordinance changing the zoning classification reduces the value of the property owned by the Bank. It is the Bank's position that the Council's action was arbitrary and capricious because it was made without a determination that the former zoning classification would be detrimental to the health, welfare and safety of the citizens of the community. The Bank contends that the adoption of the ordinance was merely a political response to the complaints of neighborhood residents to coerce the owner-developer into acceding to their wishes in a project design, and that the trial judge erred in considering factors outside of the stipulated record to hold the ordinance valid. We find no merit to these contentions.
In 1970, the property in question was initially zoned for single-family residences in the City's comprehensive zoning plan. In 1971, on recommendation of the City Planning Commission, it was rezoned to RM-2 (multiple-family residential), and remained so classified until July 22, 1982, when the City Council adopted the ordinance downgrading the zoning to RD-2 (two-family residential).
It is clear from a reading of the stipulated evidence that the councilman from the affected area introduced the ordinance to downgrade the zoning at the behest of neighbors concerned with a prospective developer's attempt to build multiple family dwellings of high intensity housing. At the Council hearing, this councilman expressed the residents' desire to exercise prior approval of the developer's designs and plans before any construction, in order to assure protection of the health, safety and welfare of the area. According to the Bank, however, the Council's action was based on purely political considerations. The Bank points out that the motivation for the ordinance was submission of plans for the residents' approval, and reclassification back to RM-2 (multiple family residential) if such approval were received. The Bank further notes that at least one other councilman voting on the ordinance expressed the belief that he was required ".... to yield to the wishes of the neighborhood people, because they're the ones who get out and vote."
Well settled is the rule that the exercise of police power in zoning cannot be made without substantial relation to the health, safety and general welfare of the public. Four States Realty Co., Inc. v. City of Baton Rouge (On Rehearing), 309 So.2d 659 (La.1975); City of Shreveport v. *1241 Conrad, 212 La. 737, 33 So.2d 503 (1947); City of Shreveport v. Bayse, 166 La. 689, 117 So. 775 (1928). It is well settled also that an ordinance is presumed valid, and that whoever attacks its validity bears the burden of proving the ordinance is arbitrary and capricious. Furr v. Mayor and City Council of Baker, 408 So.2d 248 (La. 1981); City of Shreveport v. Conrad, supra; City of Shreveport v. Bayse, supra; Jemison v. City of Kenner, 277 So.2d 728 (La.App. 4th Cir.1973). Courts will not substitute their judgments for that of a legislative body or other zoning authority, except when there is an abuse of discretion or an excessive use of power. Four States Realty Co., Inc. v. City of Baton Rouge, supra.
Although we recognized in Jemison v. City of Kenner, supra, that the actions of a public official in zoning matters cannot be based solely upon the objections voiced by voters residing in the area in utter disregard of valid sound reasons to the contrary, we also stated that the expressions of the interests of the electorate need not be totally disregarded. In the instant case, unlike Jemison, supra, the Council's action, though consistent with the area residents' desires, was based on valid reasons.
In 1970, under the Generalized Land Use Plan, the subject property was designated for development with single family residences. Indeed, a report of the City Planning Commission in November, 1971, militated against a proposed zoning change to multiple family development because: there was "adequate vacant land in RM classifications in this vicinity to accommodate the apparent existing multi-unit developments"; public facilities and schools were considered inadequate to serve such development; there were "few controls" over the development of the property; and, reclassification to allow multi-family dwellings would permit in a population increase of "more than 10,000 people". Despite these observations, however, the property was rezoned for multiple-family residential use in 1971.
In 1982, a "Neighborhood Analysis", apparently attached to a letter to the City Planning Commission on behalf of area residents, cited similar reasons against multi-family zoning: an overabundance of multiple-family classifications in the vicinity, an overburdening of transportation, utilities and other area services, lack of "controls" over the development, inadequacy of area schools, and the absence of a "buffer zone" between the property and adjacent single-family housing communities. The attorney for the area residents likewise voiced these concerns before the Council at a hearing on the proposed downzoning ordinance.
The stipulated evidence and exhibits considered, we conclude that the Council's action in downzoning the property was not made solely at the whim of the electorate, but rather was based on legitimate and reasonable concerns for the public welfare in the affected area. The councilman sponsoring the rezoning petition noted that the Council's right to down-zone the property was based on the "health, safety and welfare" of the area and consideration of "the testimony that was before us." Under the circumstances, we cannot say the expressions of the concerned neighborhood residents were without reasonable foundation.
These single family dwelling owners expressed a desire to review the plans for the prospective development in order to ascertain whether it might depreciate (to their way of thinking) the welfare of the area. The ordinance was obviously designed to afford them an opportunity for input in construction in an area directly affecting their neighborhood interests. Accordingly, despite the City Planning Commission's recommendation against the adoption of the ordinance, and the veto by the Mayor of the City of New Orleans,[1] we cannot say the City Council's action was capricious and arbitrary.
We recognize that reasonable arguments can be made that the City of New Orleans *1242 lacks adequate housing and that the adoption of the ordinance is inconsistent with those needs. Nonetheless, though we may agree with those arguments, we cannot conclude that the Council's action was arbitrary, capricious and without reason under the circumstances of this case.
Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] The vote by the City Council for the adoption of the ordinance was 6 For and 1 Against. The Mayor's veto was overruled by the City Council by a 5 to 2 vote.