671 So.2d 448 (1995)
Kimberly ALLISON-LeBLANC
v.
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, OFFICE OF STATE POLICE.
No. 95 CA 0295.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
*449 Foye L. Lowe, Jr., Baton Rouge, for 1st Appellant Department of Public Safety & Corrections, Office of State Police.
Fernin F. Eaton, Baton Rouge, for 2nd Appellant, Kimberly Allison-LeBlanc.
Debra L. Johnson, Baton Rouge, for State Police Commission.
Before CARTER and PITCHER, JJ., and CRAIN[1] J. Pro Tem.
HILLARY J. CRAIN, Judge Pro Tem.
The Department of Safety and Corrections, Office of State Police (State Police) appeals the decision of the State Police Commission (Commission), reversing the termination of probationary state police officer Kimberly Allison-LeBlanc and reinstating her to permanent status. The State Police has alleged numerous assignments of error.

FINDINGS OF FACT
Decisions of the Commission are subject to judicial review on any question of law and fact. La. Const. art. 10, sec. 50. The reviewing court must give great weight to the factual findings of the Commission which must not be set aside absent manifest error. Lawson v. State, Department of Health and Hospitals (DHH), 618 So.2d 1002 (La.App. 1st Cir.), writ denied, 624 So.2d 1222 (La. *450 1993). After careful review of the record we adopt the factual findings of the Commission which we incorporate in this opinion:
1. Appellant began her employment and training as a State Police Cadet on March 8, 1992. She graduated from the State Police Academy on July 2, 1992 and began her duty assignment at Troop D in Lake Charles on July 15, 1992.
2. State Police Procedural Order Number 208, PREGNANCY, which was in effect from the date appellant was first employed through November 9, 1992, required the following:
1.) Upon first becoming aware of her pregnancy, a trooper must report the condition on an Incident Report through her Commander to the Superintendent;
2.) The trooper is required to visit her personal physician as soon as possible and the physician will recommend in writing that the trooper be placed on administrative duty or leave, as he sees fit;
3.) A pregnant officer shall not be allowed to remain on patrol status, but shall be placed on administrative duty or leave;
4.) Administrative duty is defined as duties assigned by the Troop Commander to allow the officer to work in the section/troop headquarters, examples of which are Desk Sergeant, radio operator or clerk;
5.) The officer shall wear civilian attire when wearing a uniform becomes impracticable;
6.) Pregnant officer shall not be arbitrarily placed on sick leave. Such decisions must be based upon that officer's ability/inability to perform her duties or on the advice of her physician.
3. On September 9, 1992, appellant first learned that she was pregnant, which fact she reported to her Troop commander, Captain Kenneth E. Delcambre, on September 10, 1992. In accord with State Police Procedural Order Number 208, PREGNANCY, Capt. Delcambre instructed appellant to consult her physician to confirm this, with which instruction appellant complied.
4. On September 15, 1992, appellant filed an "Incident Report" with Capt. Delcambre referencing her prior report of her pregnancy and attaching a "Certificate of Professional Care", dated September 15, 1992, from Dr. Floyd Guidry, Jr., appellant's physician.
5. Dr. Guidry's certificate reported his examination of appellant on September 15, 1992 and that appellant was expected to deliver her baby on May 12, 1993. Dr. Guidry recommend[ed] that appellant:
[B]e put on 8 hour shifts during her pregnancy because of the extra rest needed and also that she be put on administrative duties for the duration of her pregnancy.
This is needed to assure that no complications arise.
6. By memorandum dated September 22, 1992, Lt. Col. Norris instructed Capt. Delcambre to continue to follow procedural order number 208, and to comply with appellant's physician's request for an eight hour shift. Col. Norris further indicated that appellant had only eight-eight (88) hours of total sick and annual leave, and that appellant would be placed in Leave Without Pay status when her paid leave was exhausted.
7. By memorandum dated September 28, 1992, Sgt. Dale Hall informed Captain Ronald (Ronnie) B. Jones that he had reviewed procedural order number 208 and discussed appellant's situation with Howard Elliot and Russell Culotta in personnel. Among other things, Sgt. Hall's memorandum recommends that appellant's probation period be suspended during her leave and resumed upon her return to work.
8. Capt. Jones, in a memorandum to Col. Norris dated September 28, 1992, concurred with Sgt. Hall's conclusions.
9. In an October 6, 1993 memorandum to Mr. Culotta, State Police attorney Foye Lowe confirms that "beginning October 6, 1992, she [appellant] was no longer permitted to work."

*451 10. In a memorandum dated October 6, 1992, Howard P. Elliot, Jr., General Counsel, confirming his prior discussion of appellant's situation with Sgt. Dale Hall, informed Lt. Col. Kenneth D. Norris, Deputy Superintendent, that the procedural order defining administrative duty was never finalized, and there does not exist any duty called "administrative duty". Mr. Elliot further indicated that the Department's policy is to require employees physically disabled from performing their duties to take paid leave or leave without pay, and he suggested that appellant be allowed to use her leave and/or leave without pay until she can resume her duties and return to work. Mr. Elliot finally concurred with the other details of Sgt. Hall's September 28, 1992 memorandum to Captain Ronnie Jones.
11. Sometime after September 15, 1992, and apparently on October 6, 1992, in connection with appellant's pregnancy and appellee's decision that appellant was unable to perform her routine duties, appellee involuntarily placed appellant on sick and/or annual leave. Appellant had not requested this sick or annual leave.
12. Appellant's paid (sick/annual) leave was exhausted prior to November 21, 1992, and appellant was involuntarily placed in Leave Without Pay status from that date through her termination.
13. As appellant's probationary appointment was to expire on March 8, 1993, shortly before that date, Capt. Delcambre was asked to complete an "Eligibility for Promotion" form indicating his recommendation regarding whether appellant should be approved for permanent status. On March 4, 1993, Capt. Delcambre "disapproved" appellant's promotion. In a letter of that date to Russell Culotta, Human Resources Director, stating the reasons for the disapproval, Capt. Delcambre stated that:
I will not approve permanent status for Trooper Kimberly A. Leblanc. I have not had the time to fully evaluate Trooper Leblanc's status because of her pregnancy being discovered on September 15, 1992. She has been on leave since her pregnancy was announced.
Her assignment to Troop D was in early July, 1992. She has not fully completed her field training, therefore, I can not make an honest and fair evaluation for her to be granted permanent status with the Office of State Police.
14. In a letter to Col. Norris, dated March 4, 1993, Capt. Delcambre refers to Sgt. Hall's September 28, 1992 memorandum, indicates that procedural order number 208 was in effect when appellant became pregnant and confirms that appellant complied with all of the requirements of that procedural order and department requests. Capt. Delcambre further suggests that appellant's probationary period be suspended and resumed when appellant is physically fit to return to duty, he indicates that the Personnel Section has approved doing this and he recommends that a request be made to the State Police Commission to extend appellant's probationary period, so that her training period can be continued until such time "that we can make a reasonable decision on her continued employment or termination."
15. Notwithstanding Mr. Elliot's belief that "the procedural order defining administrative duty was never finalized, and there does not exist any duty called `administrative duty'", by revision dated March 30, 1992, entitled Administrative Light Duty, procedural order number 208 was extensively revised to clearly provide for administrative duty. A cover memorandum from Col. Paul W. Fontenot, Superintendent, indicates that the purpose of the revision is to:
[P]rovide a means for returning to productive status those officers who are approaching full recovery from an illness or injury, but ... not yet ... able to return to unrestricted policy duty. The Administrative Light Duty program should reduce Departmental liabilities to Workers' Compensation and augment understaffed functions within State Police. Commanders are encouraged to utilize the manpower afforded by the implementation of this program to the *452 fullest extent possible ... [emphasis added]
16. Appellant received satisfactory ratings on her Performance Evaluation Rating for the period between March 8, 1992 and August 8, 1992, and she received a Merit Increase on September 8, 1992.
17. On a "Commendations" form dated December 12, 1992, appellant was favorably cited for the assistance rendered by her to a member of the public concerning a "Death in Family".
18. Appellant never asked to be relieved of any portion of her duties, including her regular road patrol duties. Appellant obtained Dr. Guidry's September 15, 1992 medical certificate only in compliance with appellee's procedural order number 208 and the instructions of her superiors. Dr. Guidry's certification was a mere formality and it was not nor was it intended by anyone to be a real or substantial evaluation of appellant's ability to perform her routine trooper duties, including her road patrol duties. This certificate, as well as its content requiring administrative duties, was mandated by appellee's policy (procedural order number 208).
19. Appellant testified that, had she been asked or known that appellee would change its pregnancy policy (to her detriment) after she had obtained Dr. Guidry's certificate in compliance with this policy, she would have obtained a new medical certificate which would have evidenced her ability to perform all of her regular and usual trooper duties, including her road patrol duties.
20. Appellee did not seek any relief nor guidance from the State Police Commission, its Director, staff or legal counsel prior to terminating appellant.

SEXUAL DISCRIMINATION
Disparate treatment on the basis of pregnancy is discrimination on the basis of sex pursuant to Title VII of the Civil Rights Act and the Pregnancy Discrimination Act [42 U.S.C.A. 2000e(k)]. It is also proscribed by La.R.S. 23:1008. Discrimination against a person on the basis of sex or physical condition is constitutionally prohibited. La. Const. art. I, sec. 3. Section 46(B) of article 10 of the Constitution prohibits discrimination against a classified state police officer because of political or religious beliefs, sex or race. "Discrimination" is defined in State Police Commission Rule 1.14.1 as "consideration of religious or political beliefs, sex, race, or any other non-merit factors."
Procedural Order 208 required a pregnant officer to report the fact that she is pregnant on an incident report form when she first became aware of her condition. The officer was further required to visit her personal physician as soon as possible "and the physician will recommend in writing to the Deputy Secretary that the trooper be placed on administrative duty or leave, as he sees fit." The officer "shall not be allowed to remain on patrol status, but shall be placed on administrative duty or leave."
The procedural order thus excluded pregnant women from working regular duty from the onset of pregnancy. It required them to work administrative or light duty or be placed on leave from the onset of pregnancy regardless of their ability to perform road patrol duties. The performance of road patrol is essential to the training of a probationary officer. Non-pregnant female officers and all male officers who were diagnosed with a medical condition were not relieved of road patrol duty without an evaluation of disability or inability to perform the required work. However, a pregnant police officer was automatically deemed disabled due to her condition.
We attribute no malevolent intent to State Police in establishing Procedural Order 208. However, lack of malevolent intent does not prevent a policy from being discriminatory when it results in treatment of a person in a manner which, but for that person's sex, would be different. See International Union v. Johnson Controls, Inc., 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991).
The Commission stated at page 9 of the Decision:
If appellant was not disabled, and the Commission concludes that appellee had no factual basis on which to conclude that *453 she was, appellant was, except for her pregnancy, in the same situation as any other probationary trooper, whether male or female. She was not disabled, as many other probationary troopers, male and female, were not disabled at the same time. Unlike those other probationary troopers, however, appellant was pregnant, and it was this factor alone on which she was removed from her routine duties, sent home on Leave Without Pay, prevented from continuing (and, the Commission believes, successfully concluding) her probationary period and eventually, for this reason, terminated. Other non-disabled probationary troopers, who were not pregnant, were not treated in this (discriminatory) way. Thus, appellee's policy treats pregnant female troopers differently, without merit related reason, from others similarly situated.
The Commission therefore concludes that appellee's actions toward appellant were not based on the fact that appellant was in any way unable to perform all of her routine duties, but were based solely on the fact that appellant was pregnant, which is, again, a gender specific condition. This is non-merit discrimination per se.
We find that appellant has met the required burden of proving discrimination. La. Const. Art. 10, Section 46(B). Additionally, we find that the reasons stated for plaintiff's termination in the letter of March 5, 1993, were not the true and real reasons for her termination. Her pregnancy and the discriminatory actions by the State Police due to her pregnancy were the real and true reasons for her termination. This was in violation of State Police Commission Rule 9.1(e). See Department of Public Safety and Corrections v. Thornton, 625 So.2d 713 (La. App. 1st Cir.1993). The civil service rule at issue in Thornton was identical to the State Police Commission Rule at issue in the case before us. We are in agreement with the decision of the Commission and conclude that the actions of the State Police in its treatment of Ms. Allison-LeBlanc were based solely on the fact that she was pregnant and constituted non-merit incrimination per se.

REINSTATEMENT TO PERMANENT POSITION
The Commission ordered plaintiff's reinstatement to her former position as of March 8, 1993. The State Police was ordered to pay all salary lost prior to the effective date of reinstatement, including salary lost during the time she was placed on leave without pay. This was subject to an offset for wages earned and/or unemployment benefits received by plaintiff during that period. All annual and sick leave "taken from" plaintiff during the period she was involuntarily placed on such leave was recredited to plaintiff. Additionally, the termination letter of March 5, 1993, and all references to it was ordered removed from her file. The Commission concluded that, because plaintiff had not performed police duties for approximately two years as of the time of the hearing, she should undergo further training and supervision. Thus, as a condition of her reinstatement to permanent status, for a period of six months plaintiff is to receive the same type of training and supervision received by all probationary troopers after graduation from the academy and assignment to their troop.
The State Police has assigned these actions of the Commission as error.
The Commission reasoned that but for the discriminatory treatment of appellant, she would most probably have been able to successfully complete the majority of her probationary period. The Commission noted that, pursuant to State Police Commission Rule 9.1, the probationary period was 6 to 12 months, rather than the 12 month period relied on by the State Police. She had received satisfactory ratings during the probationary period and had also received a merit increase and a commendation for her dealings with the public.
If the Commission, after a hearing, orders the reinstatement of a dismissed employee, it may reinstate the employee under such conditions as it deems proper. State Police Commission Rule 13.28(c). This includes reinstatement to a permanent position, payment of back pay, the restoration of benefits and emoluments of office as well as granting attorney fees. Department of Public *454 Safety and Corrections v. Thornton, 625 So.2d at 716. We find no error in the actions of the Commission in this regard.
These assignments are without merit. The decision of the Commission is affirmed. Costs, in the amount of $998.50, are to be paid by the Department of Public Safety & Corrections, Office of State Police.
AFFIRMED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.