859 So.2d 238 (2003)
Merrilee G. ALBRIGHT, Julie M. Lafargue, Dolores George Lavigne, Ann Mathison McLaurin and Jody L. Roberts, Plaintiffs-Appellants,
v.
SOUTHERN TRACE COUNTRY CLUB OF SHREVEPORT, INC. and Club Corporation of America, Defendants-Appellees.
No. 37,725-CA.
Court of Appeal of Louisiana, Second Circuit.
October 17, 2003.
Rehearing Denied November 10, 2003.
*239 Davidson, Jones & Summers by Allison A. Jones, Shannan L. Hicks, Shreveport, for Appellants.
Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell by Robert A. Dunkelman, Shreveport, for Appellees.
Before GASKINS, DREW and TRAYLOR (Pro Tempore), JJ.
TRAYLOR, Judge Pro Tempore.
Merrilee G. Albright, Julie M. Lafargue, Dolores George Lavigne, Ann Mathison McLaurin and Jody L. Roberts (the "appellants") appeal the judgment of the First Judicial District Court for the Parish of Caddo, Louisiana in favor of Southern Trace Country Club of Shreveport, Inc. and Club Corporation of America.

FACTS
Southern Trace Country Club of Shreveport, Inc. and Club Corporation of America (the "appellees") are the owners of a country club facility located in Caddo Parish, Louisiana known as Southern Trace Country Club ("Southern Trace"). In March 2000, Julie Lafargue ("Lafargue"), a member of Southern Trace, and two of *240 her female guests arrived at the club, ostensibly to have dinner. One of the guests was Merrilee Albright ("Albright") and the other has gone unidentified. Lafargue, Albright and the other guest entered a dining room and lounge known as the "Men's Grille" and requested to be served; however, employees of Southern Trace denied them service, informed them they were not allowed in the Men's Grille and told them that they would have to leave. Southern Trace Country Club of Shreveport, Inc. admitted in its Answer that as Lafargue and her guests left the Men's Grille, a male patron yelled out to them, "[D]on't let the door hit you on the ass on your way out."
Subsequently, in April 2000, Lafargue and Albright, joined by Dolores Lavigne, Ann McLaurin and Jody Roberts, filed suit against the appellees claiming that due to their gender, they have been denied access to and service in the Men's Grille at Southern Trace. The appellees' policy regarding the Men's Grille is as follows: "Unless otherwise authorized by the Board of Directors [the Men's Grille] is restricted to the use of men and their adult male guests" (the "policy"). The appellants further claimed that Southern Trace is a public area, accommodation or facility and that, as such, it was in violation of La. Const. art. I, § 12. Appellants sought a declaratory judgment to state the policy to be discriminatory. They also requested a permanent injunction to permit them and all female members and their respective guests access to and services by the Men's Grille.
Integral to the trial court's analysis was a decision regarding whether Southern Trace is a private club or a public accommodation. A private club is immune to claims of discrimination, while a public accommodation must comply with La. Const. art. I, § 12. In its opinion, the trial court made this analysis:
The threshold question is whether Southern Trace Country Club is a `public facility,' in which case, [La. Const. art. I, § 12] applies; or rather a `private club,' in which case it does not. The Court is guided by Revised Statutes 49:146 which provides an eight (8) fold criteria to determine if an organization is a private club; to wit:
(a) Selectiveness of the group in addition of members;
(b) Existence of formal membership procedures;
(c) Degree of membership control over internal governance, particularly with regard to new members;
(d) History of organization;
(e) Use of club facilities by nonmembers;
(f) Substantiality of dues;
(g) Whether the organization advertises; and
(h) Predominance of a profit motive.
The evidence clearly shows that Southern Trace Country Club, when evaluated by statutory requirements, is a public facility. There is no real selectiveness in the addition of new members. Bulk mailings soliciting membership and addressed to `resident,' are sent by zip code. There was no evidence of membership requirements other than the ability to pay dues and initiation fees; which Southern Trace Country Club is willing to finance at 10% [APR].
The club is completely run by Southern Trace Country Club of Shreveport, Inc. The members have no voice in the running of the club or the selection of the Board of Directors. The history of the organization is simply an effort to provide a desired product and/or service *241 for a fee to make a profit. Club facilities are routinely used by non-members, the owner corporation budgets for considerable annual advertisement, and the profit motive predominates.
The trial court's conclusion that Southern Trace was clearly a public accommodation meant it was subject to the provisions of La. Const. art. I, § 12. That finding has not been appealed.
Even though the trial court further determined that Southern Trace was a public accommodation, the court found that the exclusion of women from the Men's Grille did not constitute "arbitrary, capricious, or unreasonable discrimination based on ... sex." Appellants seek an appeal from this portion of the trial court's ruling.

DISCUSSION
On appeal, appellants argue that the trial court erred when it failed to determine that Southern Trace's policy to exclude women from the Men's Grille was a violation of La. Const. art. I, § 12.
Appellees contend that the issues involved are questions of fact subject to manifest error review. However, the trial court was called to interpret an article of the Constitution, which is clearly a question of law. Thus, a de novo, rather than a manifest error, review of the matter is warranted. See, e.g., Cleco Evangeline, LLC v. Louisiana Tax Com'n., 2001-2162 (La.04/03/02), 813 So.2d 351, 353.
The trial court determined that Southern Trace is a public facility and our review of the record supports this finding. As a public facility or accommodation, Southern Trace is subject to La. Const. art. I, § 12, which states, in pertinent part, as follows: "In access to public areas, accommodations, and facilities, every person shall be free from ... arbitrary, capricious, or unreasonable discrimination based on age, sex, or physical condition" ("Section 12").
The jurisprudence interpreting Section 12 is scant; however, La. Const. art. I, § 3, or Louisiana's "equal protection" law ("Section 3"), contains almost identical language to Section 12. Section 3 has been widely interpreted by this state's courts, specifically regarding the level of scrutiny used to assess claims of gender discrimination under Section 3. Therefore, we will employ the same scrutiny in analyzing this claim being made under Section 12.[1]
Equal protection challenges under Section 3 are analyzed based on the discriminatory classifications enumerated therein. An intermediate level of scrutiny is reserved for laws which classify persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliation. Manuel v. State, 95-2189 (La.03/08/96), 692 So.2d 320. When a court reviews such a classification, the burden is on the proponent of the classification and the standard of review is heightened, requiring the proponent to establish that the classification is not arbitrary, capricious or unreasonable because it substantially furthers an appropriate governmental *242 objective. Manuel, supra. Thus, we will examine Southern Trace's policy under such an intermediate scrutiny to determine whether Southern Trace established that the classification (i.e., the exclusion of female members) was not arbitrary, capricious, or unreasonable because it substantially furthers an appropriate objective.
In this matter, three objectives for the discrimination were articulated or inferred: economic/market factors, privacy, and male preference. The trial judge reasoned that "economic and competitive market factors, rather than discrimination," drove Southern Trace's policy. At trial, appellees submitted testimony by Johnson Ramsey ("Ramsey"), Southern Trace's developer, who explained that almost every other similar country club had a men's only dining area, although he did not specify whether these were private or public clubs. Additionally, Brian Walsh ("Walsh"), manager of Southern Trace, testified regarding the approximate revenue generated by the Men's Grille versus the ladies' dining facility.
In Easebe Enterprises, Inc. v. Alcoholic Beverage Control Appeals Bd., 141 Cal. App.3d 981, 190 Cal.Rptr. 678 (2d Dist. 1983), when men were not admitted to a Chippendale's dance club, the nightclub argued that such admission would be the commercial demise of its business because women would no longer want to attend, and the court stated that "[a]n entrepreneur's discriminatory practice based upon ostensible rational economic self-interest still violates" that state's statute against arbitrary discrimination based on gender.[2]
The production of more revenue by the Men's Grille is not a valid reason to discriminate in this case. Economic or market factors are not an appropriate objective when the discrimination is the reason for economic success, or said another way, when the club strives to make more money because it discriminates. Based upon the facts before us, Southern Trace has not shown that economic/market factors are an appropriate objective making the discrimination against women in this public club grill reasonable.
The underlying theme of the trial judge's decision was that the discrimination was reasonable because of privacy concerns. Certainly, privacy concerns are appropriate objectives in places where modesty should prevail, such as dressing or locker rooms. This dining area is contiguous to the men's locker room, with an open entry to the locker room. However, the facts belie that this was an area with privacy concerns. The Men's Grille was often open to the public, and used frequently by both sexes during holiday seasons. The room is also used by both genders for various tournament events and private parties during the year. Walsh testified that during such events, a screen is erected clearly separating the men's locker room and blocking the view. He characterized this accommodation as being easily made. The club house rules also require "casual but appropriate attire" in the Men's Grille.[3] In fact, Ramsey testified *243 that there were four tables in the actual locker room where men could eat and drink in a state of undress. Further, Southern Trace did not present any evidence regarding the gender of the wait-staff in the Men's Grille, which indicates the room apparently was not private enough to exclude female servers. These factors dispel the notion that the Men's Grille is actually part of the men's locker room. Southern Trace was unable to carry its burden that this area should be cloaked with privacy concerns, thereby failing to show this was an appropriate objective for the discrimination.
The preference of the male membership for a men's only dining facility is also suggested as a reason for the discrimination. The record blatantly shows that the preference of some male members was the primary force behind the policy. In fact, when Walsh was asked what his understanding was regarding the reason for the policy, he explained, "... the facilities in the men's roomin the men's area there were there just for the enjoyment of the men when they're out playing golf, ..." When asked if there was any other reason for the policy other than the enjoyment of the men, Walsh responded, "No." Additionally, in order to establish that a substantial number of male members of Southern Trace felt strongly in favor of maintaining the Men's Grille, Ramsey testified that a meeting of 85-110 male members of Southern Trace was called by an individual member to address the issue raised by the appellants' claims. Ramsey also stated that if a vote of the membership were conducted, the result would be to keep things the same.
Regarding the reasoning that some of the men simply prefer the male exclusivity of the Men's Grille, we need not even employ the heightened scrutiny used to examine gender distinctions, but simply look to the clear and unambiguous wording of Section 12 that "every person shall be free from ... arbitrary, capricious, or unreasonable discrimination based on ... sex...." (Emphasis added). Capricious is defined as "governed by or showing caprice; unsteady; changeable; fickle; fanciful; as, a man of a capricious temper." Webster's New Universal Unabridged Dictionary, Second Edition, 1972. Further, caprice is defined as "whim, arbitrary, seemingly unfounded motivation. Disposition to change one's mind impulsively." Black's Law Dictionary, Fifth Edition, 1979. Further, in Jemison v. City of Kenner, 277 So.2d 728, 729 (La.App. 4th Cir. 1973), writ denied, 281 So.2d 753 (La. 1973), the court noted that "... The words arbitrary and capricious are practically synonymous and mean without reasonable cause and do not necessarily imply an opprobrious connotation. Arbitrary action is based upon one's will and usually implies an abuse of one's authority or power...." (Citation omitted.) (Emphasis added.) A reasoning that those making the sex-based exclusion simply prefer the policy is by definition arbitrary and capricious, thus making the policy clearly the illegal discrimination of women under Section 12. The objective or justification of some men's preference, on its face arbitrary and capricious, is woefully insufficient to support the appellees' policy.
"Lack of malevolent intent does not prevent a policy from being discriminatory when it results in treatment of a person in a manner which, but for that person's sex, would be different." See Allison-LeBlanc *244 v. Department of Public Safety and Corrections, Office of State Police, 95,0295 (La.App. 1st Cir.10/06/95), 671 So.2d 448.
Other jurisdictions have held that such similar arbitrary or capricious gender distinctions in places of public accommodation are illegal. In Franklin Lodge of Elks v. Marcoux, 2002-571 (N.H.06/13/03), 825 A.2d 480, female applicants brought a gender discrimination action against the Franklin Lodge of Elks Club based on New Hampshire's similar statute prohibiting gender discrimination in places of public accommodation. In that case, the court determined that the discrimination was "clearly intentional," where members remarked that "the Elks was a `man's club,'" and "the women were denied membership solely because of their gender." Id. at 488.
In Wanders v. Bear Hill Golf Club, Inc., 1998 WL 1181150 (Mass.11/30/98), the female members of Bear Hill Golf Club brought suit when they were denied play in weekend golf tournaments solely because of their gender. Under Massachusetts' law which prohibits discrimination based upon gender in places of public accommodation, the court determined that the private club was a place of public accommodation, and that some club members (i.e., women) were prevented from using the club's facilities as freely as others (i.e., men), and that even if the tournaments were "separate but equal," the club would still be violating the law, because the club was discriminating against its members solely on grounds of gender. Id. at 3.
Finally, we note the recent opinion, Borne v. Haverhill Golf & Country Club, Inc., 58 Mass.App.Ct. 306, 791 N.E.2d 903 (06/13/2003), review denied, 440 Mass. 1101, 795 N.E.2d 573 (09/05/03). In that case, nine female members of the Haverhill Golf & Country Club sued the club alleging that as a public accommodation, it had unlawfully discriminated against them based solely on their gender. The trial court awarded the plaintiffs $1,967,400 in damages as well as injunctive relief requiring the cessation of the Club's unlawfully discriminatory acts. Although the club's actions included more egregiously discriminatory actions than in the case sub judice, one of the acts noted did include the club's 19th Hole, a men's-only grill, for which the club manager was told he "must try to keep the women out...." Id. at 311, 791 N.E.2d 903. After discussing the jury's damage award, the Massachusetts court made the following comments, worthy of repeating herein:
Playing golf was not one of the unalienable rights of 1776, but it is naive not to recognize the degree to which golf links and the country club are the locale for developing professional and business contacts. Golf and the country club lubricate the advance of careers. Deals are cut on the fairway and in the clubhouse.

Id. at 915. (Emphasis added, footnote omitted).
Ironically, one undeniable economic factor does exist by virtue of Southern Trace's policy. That is the economic discrimination that is perpetuated against women by excluding them from the social clubs and "back rooms" where business relationships are established and deals are made. In the year 2003, Louisiana women[4] work side by side with men in the courtrooms, operating rooms and boardrooms. There is no reason why they *245 should still be excluded from country club dining rooms which are deemed to be public accommodations.
Southern Trace has chosen to make itself a "public accommodation," and, as such, it has subjected itself to the mandates of La. Const. art. I, § 12. The record shows that the exclusion of women from the Men's Grille only advances the convenience and preferences of the male members who utilize it. There is no evidence that a substantial objective is served by excluding women from a portion of Southern Trace.[5] The policy of Southern Trace not to serve women in the Men's Grille is a violation of our state Constitution that cannot be allowed to stand.
Economic/market factors are not an appropriate objective where Southern Trace hoped to profit from the fact that it discriminated against women in the Men's Grille. Although privacy concerns could be a legitimate objective, Southern Trace was unable to carry its burden that the Men's Grille was an area that should be private. Finally, male preference in a public club can never be an appropriate objective by which to justify discrimination. Thus, we conclude, as a matter of law, that the holding of the trial court was in error.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed. Costs of this appeal are assessed to Southern Trace Country Club of Shreveport, Inc. and Club Corporation of America.
REVERSED AND RENDERED.

APPLICATION FOR REHEARING Before WILLIAMS, GASKINS, DREW, MOORE, and TRAYLOR, JJ.
Rehearing denied.
NOTES
[1] Such an analogy is proper. Constitutional provisions in pari materia, or of the same subject matter, should be construed together. Articles of the Constitution may be taken and construed together as one system and as explanatory of one another. Succession of Lauga, 624 So.2d 1156 (La.1993); Cohort Energy Co. v. Caddo-Bossier Parishes Port Com'n, 37,449 (La.App.2d Cir.08/20/03), 852 So.2d 1174. When related articles are not construed as such, "they might become inharmonious and inconsistent." See Gruner v. Police Jury of Claiborne Parish, 119 La. 551, 554, 44 So. 295, 296 (1907); see also La. C.C. art. 13. In fact, the trial court noted that a heightened level of scrutiny was warranted in this case. It stated that a "heightened standard of review... has been applied to sex based classification[s]...."
[2] The economics objective further raises the question of whether the economics driving the policy is that appellees fear losing revenue due to the demise of business in the Men's Grille if women were allowed in. The record reflects that at a Board of Governors meeting on December 7, 1999, the subject of the policy was brought to its attention and discussed. It was noted that if the policy remained, Southern Trace might lose three to ten memberships, but if the policy was changed, the club risked losing thirty to forty memberships. At that meeting, it was stated that to risk the steady income of the Men's Grille was a bad decision.
[3] In 2000, when this matter arose, the Rules and Regulations required "casual but appropriate attire" in the dining rooms. The only dining rooms listed were the Azalea Grille and the Men's Grille. Interestingly, the rules were subsequently amended, changing the segment titled "Men's Grille" to "Men's Locker Area," although it kept another segment titled "Locker Rooms and Exercise Room."
[4] According to the 2000 United States census, women in Louisiana make up 51.6 percent of the population.
[5] Or, for that matter, that a substantial objective is served by excluding the male members from an equivalent dining room set apart for the women.