Judgment rendered November 17, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,112-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| MICHELLE WILLIAMS AND NICOLE WILLIAMS GROSS | Plaintiffs-Appellees |

versus

| | |
|---|---|
| CENTERPOINT ENERGY RESOURCES CORP., AND THE CITY OF SHREVEPORT, LOUISIANA | Defendants-Appellant-Appellee |

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 600967

Honorable Michael A. Pitman, Judge

* * * * *

| | |
|---|---|
| PHELPS DUNBAR LLP<br>By: H. Alston Johnson, III | Counsel for Appellant,<br>CenterPoint Energy<br>Resources Corp. |

PLAUCHÉ MASELLI PARKERSON LLP
By: G. Bruce Parkerson
    James K. Ordeneaux
    Scott H. Mason

BARHAM & WARNER, L.L.C.
By: Vicki C. Warner

AYRES, SHELTON, WILLIAMS, BENSON
& PAINE, LLC
By:  Curtis R. Shelton
     Lee H. Ayres
     Jody T. Benson

Counsel for Plaintiffs/
Appellees, Michelle
Williams and Nicole
Williams Gross

COLVIN, SMITH, McKAY & BAYS
By:  Jennifer P. McKay

Counsel for Defendant/
Appellee, The City of
Shreveport, Louisiana

* * * * *

Before STONE, ROBINSON, and HUNTER, JJ.

**HUNTER, J.**

The defendant, CenterPoint Energy Resources Corp., appeals a trial court judgment awarding expert witness fees in the amount of $238,047.10, associated with services and testimony provided by three plaintiffs' experts. The plaintiffs, Michelle Williams and Nicole Williams Gross, have answered the appeal, seeking a reversal of the trial court's denial of their claim for expert witness fees associated with work completed by others at the behest of the experts. For the following reasons, we affirm.

## FACTS

On July 31, 2016, the decedent, Dr. Richard Williams, lit a cigar in the back yard of his home in Shreveport, Louisiana. An explosion and fire occurred, and Dr. Williams sustained severe burns. He later died as a result of his injuries.

The plaintiffs, Michelle Williams and Nicole Williams Gross, the widow and daughter of Dr. Williams, filed a lawsuit against defendants, CenterPoint Energy Resources Corp. ("CenterPoint") and the City of Shreveport, Louisiana ("the City"). The plaintiffs alleged the explosion and fire were caused by a major leak in a natural gas line immediately adjacent to the home of Dr. and Mrs. Williams, CenterPoint was the operator and transporter of the natural gas, and CenterPoint was responsible for the condition and maintenance of the gas line. Further, the plaintiffs alleged the City, which maintained and operated the utility rights of way in Shreveport, was liable for failing to replace and maintain the gas pipeline.

A bifurcated trial was held, and a jury considered the claims with regard to CenterPoint's alleged liability.[1] The issues of liability and damages were hotly contested, and multiple expert witnesses testified at trial. After the conclusion of the presentation of testimony and evidence, the jury apportioned 80% fault to CenterPoint, 15% fault to the City, 5% fault to the decedent, and 0% to Michelle Williams, and awarded $8,369,536.83 in damages. Thereafter, the trial court entered a judgment in favor of the plaintiffs in accordance with the jury's verdict, plus "such costs as are fixed by the Court with judicial interest according to law until paid in full." CenterPoint satisfied the judgment against it, paying $6,695,629.49 in principal and $699,968.44 in judicial interest.

Subsequently, the plaintiffs filed a motion to tax costs and expert witness fees in the amount of $318,605.25, in addition to "all other costs incurred." Relevant to this appeal are the expert witness fees attributable to three experts retained by the plaintiffs: Rick Jones, an expert in fire cause and origin, Robert Bartlett, a mechanical engineer and metallurgist, and Edward Ziegler,[2] an expert in gas pipeline safety and human factors. As to those experts, the plaintiff requested fees as follows: $67,386.96 for Jones, $100,667.44 for Bartlett, and $144,850.85 for Ziegler.

CenterPoint opposed the motion, arguing the plaintiffs were "attempting to recover pre-trial costs that [were] not 'incurred directly in

---

[1] In the bifurcated trial, a jury considered the claims against CenterPoint, while the trial judge considered the claims against the City. After considering the evidence, the trial court found the City was not at fault. The plaintiffs did not appeal that judgment.

[2] In some portions of the record, Ziegler's last name is misspelled "Zeigler." However, when he spelled his name for the record during his deposition, he spelled it, "Ziegler." Additionally, his named is spelled "Ziegler" on the correspondence from his limited liability company contained in the record. Therefore, with the exception of direct quotations, for the purposes of this opinion, we will utilize the spelling "Ziegler."

connection with the expert's assistance at trial.'" According to CenterPoint, the plaintiffs' expert costs should have been limited to the costs associated with testifying at trial and preparing to testify at trial, and should not have included time spent assisting plaintiffs' counsel in preparing for trial or time spent collecting and evaluating evidence prior to the filing of the lawsuit. CenterPoint maintained the costs should not have exceeded $42,920.81 (80% of that amount would total $34,336.65).

A hearing on the motion to tax costs was held on September 9, 2019. At the conclusion of the hearing, the trial court stated, in pertinent part:

> [T]he costs to be taxed relating to expert witness fees in the instant matter apply only to the work performed in preparation for trial on behalf of testifying expert witnesses.
> ***
> This lawsuit began in May of 2017 and continued into October 2019. The trial lasted over two weeks, spanning from March 13, 2019 through March 29, 2019. The initial request on behalf of the Plaintiffs exceeded $30,000,000.00 and was reduced to an award amounting to 80% of $8,369,536.83. Expert witnesses were presented on behalf of both parties, and the amount spent on expert witnesses by Defendants was comparable to the amount requested in Plaintiffs' Motion.
>
> Plaintiffs conducted several depositions, wherein each of the expert witnesses with fees in dispute testified as to their hourly rates and time spent in preparation for trial. According to Plaintiffs' depositions of the expert witnesses, the hourly rates were charged as follows: Mr. Jones, $155.00 per hour; Mr. Bartlett, $325.00 per hour; and Mr. Zeigler, $295.00 per hour. Each expert witness testified that their rates were reasonable and customary for someone in their field with similar education, training and experience. In addition, each expert witness affirmed that their hours spent in preparation for trial were what was needed for each to be prepared for trial. The hours spent by the expert witnesses in preparation for trial were paid for in full by the Plaintiffs prior to bringing the Motion.
> ***
> This multimillion dollar case involved a myriad of complex scientific and human factors. As such, the Plaintiffs' experts were required to be thorough, collect and analyze sufficient facts and data, and apply reliable principles and methods.

3

Certainly, any shortcomings on any one of those requirements would have subjected the Plaintiffs to the possibility that an expert's testimony would not be allowed. The work conducted in preparation for trial by each expert witness was necessary for the Plaintiffs in proving their case. The Court recognizes both parties' efforts to provide a thorough and analytical review of the pertinent facts to this case, and considered the factors as to each expert accordingly.

***

The trial court awarded expert witness fees as follows: $41,060.56 for work completed by Jones, $48,919.69 for the work completed by Bartlett, and $144,866.85 for the work completed by Ziegler. The court also awarded additional costs of other experts, exhibits, video depositions and transcripts, clerk of court and sheriff costs, transcription of audio calls, certified copies of medical records, and trial exhibit costs.

Additionally, relying on this Court's decision in *Luv N' Care, Ltd. v. Jackel Int'l Ltd.*, 52,615 (La. App. 2 Cir. 4/10/19), 269 So. 3d 1136, *writ granted*, 2019-0749 (La. 10/8/19), 319 So. 3d 854, and *rev'd on other grounds*, 2020 WL 499164, 2019-0749 (La. 1/29/20), ___ So. 3d ___, the trial court denied the plaintiffs' claim for expert witness fees associated with the costs of work completed by others at the behest of the expert. The court stated:

I took a long time working on this opinion, and also I was waiting for the Supreme Court to come back with their opinion in *Luv N' Care*. *** And it did address expert witness fees at the Second Circuit, but the Supreme Court did not address it in their opinion, but I did want to wait to see if they were going to address it. *** But I also took a long time going through all of this – each expert and some of the other expenses, because it was a lot of money that was involved in this, and I really did give this a lot of thought. And one of the main things that formed the basis of my opinion is the *Luv N' Care* opinion that I can only award those fees for actual preparation for trial, not for consultation with the attorneys and things of that nature.

And so that was a reason why I reduced the amount that the plaintiffs were requesting.

***

CenterPoint appeals; the plaintiffs have answered the appeal.

## DISCUSSION

CenterPoint contends the trial court abused its discretion in awarding expert witness fees exceeding $235,000.00, for the fees associated with Jones, Bartlett, and Ziegler. According to CenterPoint, expert witnesses are only entitled to reasonable compensation for costs associated with preparing to testify at trial and the actual participation in the trial. CenterPoint maintains the trial court erroneously awarded costs for all of the time the experts expended on this case over the course of two and a half years. Additionally, CenterPoint asserts much of the work and investigation performed by the expert witnesses commenced prior to the lawsuit being filed, and the experts should not be compensated for that work, as it was not conducted to prepare the experts to testify at trial. Furthermore, CenterPoint urges this Court to adhere to the "American Rule," by which each party would bear its own litigation costs.

Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. La. C. C. P. art. 1920. Additionally, La. R.S. 13:3666 provides, in pertinent part:

> A. Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.

5

B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:

(1) From the testimony of the expert relative to his time rendered and the cost of his services adduced upon the trial of the cause, outside the presence of the jury, the court shall determine the amount thereof and include same.

(2) By rule to show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by the party cast in judgment, which rule upon being made absolute by the trial court shall form a part of the final judgment in the cause.

***

An expert witness is entitled to reasonable compensation for his court appearance and for his preparatory work. The trial judge is not required to set an expert witness fee at the amount charged by the expert witness. The trial judge has great discretion in awarding and fixing costs and expert witness fees. *Boone v. Top Dollar Pawn Shop of Bossier, LLC*, 50,493 (La. App. 2 Cir. 2/24/16), 188 So. 3d 1093; *Hammock ex rel. Thompson v. Louisiana State Univ. Med. Ctr. in Shreveport*, 34,086 (La. App. 2 Cir. 11/1/00), 772 So. 2d 306.

Relevant factors in fixing expert witness fees include the time spent testifying, time spent in preparation for trial, time spent away from regular duties while waiting to testify, extent and nature of the work performed, and the knowledge, attainments of the expert. The court may also consider the helpfulness of the expert's report and testimony to the court and the complexity of the problem addressed by the expert. *Boone, supra.* A trial court's assessment of costs can be reversed by an appellate court only upon a showing of abuse of discretion. *Ryan v. Case New Holland, Inc.,*

51,062 (La. App. 2 Cir. 12/22/16), 211 So. 3d 611; *Allstate Enterprises, Inc. v. Brown*, 39,467 (La. App. 2 Cir. 6/29/05), 907 So. 2d 904.  An abuse of discretion occurs when such discretion is exercised in a way that deprives a litigant of his day in court.  *Anderson v. Cunningham*, 34,859 (La. App. 2 Cir. 5/9/01), 786 So. 2d 940; *Louisiana State Bd. of Dentistry v. Baker, D.D.S.*, 33, 828 (La. App. 2 Cir. 9/27/00), 768 So. 2d 683.  Generally, an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner.  *Quality Env. Processes, Inc. v. IP Petroleum Co., Inc.*, 2016-0230 (La. App. 1 Cir. 4/12/17), 219 So. 3d 349, *writ denied*, 2017-0915 (La. 10/9/17), 227 So. 3d 833.

In *Albright v. S. Trace Country Club of Shreveport, Inc.*, 37,725 (La. App. 2 Cir. 10/17/03), 859 So. 2d 238, 243, *writ granted*, 2003-3413 (La. 3/26/04), 871 So. 2d 331, and *aff'd*, 2003-3413 (La. 7/6/04), 879 So. 2d 121, this Court defined the terms "arbitrary and capricious" as follows:

> Capricious is defined as "governed by or showing caprice; unsteady; changeable; fickle; fanciful; as, a man of a capricious temper." Webster's New Universal Unabridged Dictionary, Second Edition, 1972.  Further, caprice is defined as "whim, arbitrary, seemingly unfounded motivation.  Disposition to change one's mind impulsively." Black's Law Dictionary, Fifth Edition, 1979. Further, in *Jemison v. City of Kenner,* 277 So.2d 728, 729 (La.App. 4th Cir.1973), *writ denied*, 281 So.2d 753 (La.1973), the court noted that "... The words arbitrary and capricious are practically synonymous and mean without reasonable cause and do not necessarily imply an opprobrious connotation. Arbitrary action is based upon one's will and usually ***implies an abuse of one's authority or power*** ...." (Citation omitted.) (Emphasis added).

In the instant case, the trial court conducted a hearing on the motion to assess fees and costs.  The parties presented the court with the invoices submitted by Jones, Bartlett, and Ziegler, and the deposition testimony of the three experts.

7

*Richard ("Rick") Jones, Jr.*

CenterPoint argues the trial court abused its discretion in awarding $41,060.56 for expert witness fees attributable to Rick Jones. CenterPoint maintains Jones spent approximately 20 hours traveling to and attending the trial, including the two and a half hours he testified, and, as such, the plaintiffs should have only been awarded $12,165.00, the amount which reflects the time Jones testified he spent actually traveling to and preparing to testify at the trial. Nevertheless, the plaintiffs sought reimbursement for 295 hours Jones allegedly spent "preparing for trial." CenterPoint also asserts Jones' testimony was neither complex nor helpful because it (CenterPoint) had submitted documents which showed the explosion was caused by "the unintentional release of natural gas from its cast-iron main." Although the trial court described Jones' testimony as "helpful to both this Court and the jury," the court did not mention the report submitted by Jones when it ruled in favor of the City.

Our review of the record reveals the plaintiffs requested $67,386.96 for expert witness fees associated with the work performed by Jones. As stated above, Jones, a certified fire investigator, was retained as the plaintiffs' origin and cause expert. Two days after the fire and explosion, Jones sent two of his employees to Shreveport to begin processing and investigating the scene. During his deposition related to costs, Jones testified he charged $155.00 per hour for his time spent working on this case, as shown by the invoices issued by his firm. Jones testified with regard to the time, effort, travel, and preparation required to testify in a case he described as "very complex." He testified as follows:

***

> This [case] had a lot of players, a lot of evidence, a lot of
> testing, a lot of history, a lot of research. I mean, this goes back
> over 100 years that the pipe was in the ground. So they had
> history to go along with this that you needed to research and
> learn when the pipe was put in. So this was a very complex
> case.

***

With regard to Jones, the trial court specifically found his services as an expert required multiple site and off-site inspections, the interviewing of witnesses, inspection of artifacts, the review of documents and depositions, and applying the proper analysis to the facts he gathered. The trial court also found the testimony of Jones "provided crucial expertise pertaining of the ignition as well as its source," and enabled the jury to "understand the evidence and to determine facts [at] issue at trial." The trial court ultimately awarded $41,060.56 in expert witness fees for services rendered by Jones. Jones testified with regard to the number of hours he and his employees expended on this case, and he submitted the invoices as evidence thereof. Other than arguing the amount awarded to Jones was excessive, CenterPoint has presented no evidence to support the amount of time expended, or the charges therefor, as being excessive. Nor did CenterPoint present any evidence to show the trial court acted arbitrarily or capriciously or abused its authority in ordering the amount. Based on the record before us, we find the amount awarded is supported by the record, and the trial court did not abuse its discretion in awarding to the plaintiffs $41,060.56 in expert witness fees for the expertise and testimony of Jones.

*Robert ("Bob") Bartlett*

Additionally, CenterPoint argues the trial court erred in awarding $48,919.69 for fees associated with Bob Bartlett's expert testimony.

9

Bartlett, a mechanical and metallurgical engineer, testified on behalf of the plaintiffs as an expert in metallurgy. CenterPoint maintains Bartlett spent only 18.5 hours traveling to and attending the trial, and his testimony lasted one hour and 44 minutes. Yet, the plaintiffs requested, and were awarded fees for, 130 hours for Bartlett's "preparatory work for trial." CenterPoint does not dispute Bartlett's knowledge and skill. However, it notes Bartlett's written report was not introduced at trial and, therefore, it could not have been "helpful" in assisting the judge or the jury. Further, CenterPoint maintains Bartlett's trial testimony did not contain any information not already in CenterPoint's public filings, and any work expended by Bartlett may have assisted plaintiff's counsel in framing and presenting the case, but did not help the trier of fact. CenterPoint urges the fees for Bartlett's testimony should be reduced from $48,919.69, to $11,667.50.

As stated above, the plaintiffs requested $100,667.44 for expert witness fees associated with the work performed by Bartlett, who testified with regard to the cast iron gas pipe which leaked and ignited, resulting in the death of Dr. Williams. During his deposition testimony relative to the motion to tax costs, Bartlett testified he conducted testing and research which were incorporated into the opinions he formed in this case. He also stated he attended inspections and reviewed documents which were necessary to formulate his opinions. Bartlett testified he charged an hourly rate of $325.00, and his engineering firm submitted invoices to reflect the hours expended by Bartlett and his employees related to this case. Bartlett also testified the rate he charged was "a reasonable and customary rate" for someone in his field with similar education, training, and experience. He further testified other mechanical engineers and engineering technologists

10

employed by his company performed some of the work in this matter, and some of the invoices billed for work completed by them. Bartlett stated the work performed by his employees was at his behest and was necessary in the preparation for his trial testimony. He also testified the issues he was asked to address were "complex." He stated:

> Well, this is typical of the type of work that we do. But it is complex. But after you develop patterns of addressing them, it's not that challenging. But it is a complex interpretation of facts, metallography and metallurgical evaluation and various types of technical evaluations that we did. There is certainly some complexity to this. This is not just common sense material.

During his testimony on cross-examination, Bartlett testified he initially became involved in this case after he was contacted by Rick Jones. He also testified he was retained to work on this case before the lawsuit was filed, and any work he performed prior to the filing of the lawsuit, including developing alternate protocols, was "definitely in preparation for gaining the information we needed in order to testify at trial." Bartlett submitted invoices to reflect the hours he and his employees spent working on this case.

> With regard to Bartlett's testimony, the trial court stated:

> Mr. Bartlett provided opinions related to CenterPoint's cast iron main that leaked and ignited, leading to the death of Dr. Williams. These opinions also tied to the opinions of Mr. Zeigler, as they related to the inherent dangers found in CenterPoint's gas distribution system. Mr. Bartlett's testimony on CenterPoint's cast iron main provided crucial evidence as to the inherent dangers of cast iron pipes and their threat to the safety of the general public and to Dr. Williams. Further, Mr. Bartlett provided testimony as to the complexity of the case. Specifically, Mr. Bartlett spoke as to the complex interpretation of facts, metallography and the metallurgical evaluations as well as technical evaluations conducted.

11

We have reviewed this record, including the invoices submitted by Bartlett's firm, and his deposition testimony related thereto. Bartlett testified with regard to his hourly fee, and he provided invoices detailing the hours spent working on this case. There is no evidence of record the trial court abused its discretion or acted arbitrarily or capriciously in awarding to the plaintiffs expert witness fees, in the amount of $48,914.69, associated with Bartlett's trial preparation and testimony.

*Edward Ray Ziegler*

Additionally, CenterPoint contends the trial court erred in awarding $144,866.85 in expert witness fees for the preparation and testimony of Ziegler. CenterPoint argues Ziegler's testimony lasted four hours and eleven minutes, and he allegedly spent approximately 40 hours traveling to and from Shreveport to attend the trial. Further, according to CenterPoint, Ziegler admitted he copied and pasted certain portions of this case from a report he had previously prepared for another case; therefore, it is "doubtful" he spent the more than 80 hours he claimed for "preparing for trial." Further, CenterPoint asserts Ziegler's trial testimony did not reference most of the information contained in his report. CenterPoint argues this Court should not "confuse the standard of 'time spent in preparation for trial' with 'time spent working on a case.'" CenterPoint also urges Ziegler billed the plaintiffs for the time he spent "working on the case," but he did not make any effort to segregate the time he spent genuinely preparing for the trial.

Ziegler, an expert in pipeline safety and human factors, testified via deposition with regard to the expert witness fees. He testified he was retained by plaintiffs' counsel in July 2018, and he began working, gathering

12

facts and information necessary to prepare a report and to testify in this case. Ziegler testified as follows:

> As I started to review material, looked at the documents, gathered facts and information, it was all the beginning of the process that continued over the next series of invoices that we'll probably be talking about, which the ultimate goal was to prepare to testify in a trial. So, everything I did in this process and the time that was billed was geared toward gathering that information for ultimate trial testimony.
>
> ***

Ziegler also testified with regard to the invoices he submitted to reflect the number of hours he expended working on this case. He stated his fee for working on this case was $295.00 per hour. According to Ziegler, the fee was reasonable and customary in his industry, and his "rates are probably on the low end of the industry for people who do similar work and have similar experience."

During cross-examination, Ziegler testified everything he did pertaining to this case "was preparation for and gathering information to testify at the trial." He stated whenever he is retained in a case, "the only purpose of performing the work, preparing, reviewing for, as I work on the case, is to testify at the trial." Ziegler admitted the word "trial" did not appear in his 47-page report. Nevertheless, he stated:

> But I'm analyzing these issues, and the purpose of preparing the report and learning about the case and gathering information and looking at what the other experts did in their approach, et cetera, is to go to the trial and explain these issues to the jury. That's the sole purpose of this entire consulting project on my part.

Ziegler also testified he utilizes a "standard format," and some aspects of his reports are similar. For example, he stated he typically does not rewrite the section pertaining to his background in every report he generates.

13

With regard to Ziegler, the trial court stated:

Mr. Zeigler provided testimony on safety, pipeline safety, and human factors. Mr. Zeigler reviewed thousands of pages of documents produced in discovery by CenterPoint, as well as dozens of depositions. His work also included a review of the federal Pipeline Safety Regulations and CenterPoint policies and procedures. Mr. Ziegler was accepted as an expert in pipeline safety and human factors by this Court, and his knowledge and skill set was helpful to the trier of fact to understand the evidence and to determine facts in issue at trial. Specifically, Mr. Zeigler's testimony was offered in support of a finding of fault on CenterPoint and a finding of no fault on the part of Plaintiff, Michelle Williams.

Our review of this record reveals no abuse of discretion with regard to the amount of expert witness fees, $144,866.85, awarded to plaintiffs for the services of Ziegler. The invoices reflect Ziegler expended numerous hours examining documents and records in the case and in formulating his opinions in preparation for his testimony at trial. Further, as the trial court noted, his trial testimony was helpful to the jury in allocating fault in this matter. Our review of the record has revealed no abuse of the trial court's discretion.

Consequently, we find the rates charged by the expert witnesses, Jones, Bartlett, and Ziegler, and the total number of hours expended by the experts for preparing and testifying were reasonable, given the facts and complexity of this case. We find the amounts awarded were sufficient to fairly compensate the expert witnesses for their court appearances and their preparatory work. Accordingly, we find the trial court did not abuse its discretion or authority in awarding to plaintiffs expert witness fees in the amount of $238,047.10, for the testimony and preparatory work performed by Jones, Bartlett, and Ziegler.

14

In their answer to this appeal, the plaintiffs contend the trial court committed a legal error by concluding it could not award expert fees for work ancillary to the expert's work. According to the plaintiffs, they were entitled to an award of fees for work completed by employees of the expert witnesses, at the behest of the experts.

In *Luv N' Care*, *supra*, this Court held the trial court abused its discretion in awarding expert witness fees for "work done by persons other than [the expert]." *Id*. at 1143. However, the plaintiffs argue, this particular issue was not raised by either of the parties in the case, and this Court did not cite any statutory or jurisprudential authority to support its statement. According to the plaintiffs, *Luv N' Care*, *supra*, "was decided wrongly and should be abrogated by this Court."

In the instant case, the record reflects Jones and Bartlett submitted invoices which included hours of work and travel by other engineers and technicians employed by their companies. Both experts testified some of the underlying background work, including processing of the scene, gathering of information, and analyses of data, was actually completed by some of their employees. Nevertheless, they testified the work was vital to this case because it assisted them in forming their conclusions and opinions and preparing for the trial in this case.

The plaintiffs assert R.S. 13:3666, which permits the trial court to award "additional compensation, to be fixed by the court, with reference to the value of time employed and the degree or learning or skill required," and the language of the statute does not limit the award to include only the work of the expert witness. The plaintiffs also point out courts have not limited

15

attorney fee awards to services provided by the attorney alone, but have allowed the recovery for paralegal services when awarding attorney fees. *See Hanley v. Doctors Hosp. of Shreveport*, 35,527 (La. App. 2 Cir. 6/6/02), 821 So. 2d 508.

Statutory interpretation begins with the language of the statute itself. *Arabie v. CITGO Petroleum Corp.*, 10-2605 (La. 3/13/12), 89 So. 3d 307. The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter, and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting it. *City of Pineville v. American Federation of State, County, & Municipal Employees, AFL-CIO, Local 3352*, 00-1983 (La. 6/29/01), 791 So. 2d 609. Courts are bound to construe all parts of a statute and to construe no sentence, clause, or word as meaningless if a construction giving force to and preserving all words legitimately can be found. *McGlothlin v. Christus St. Patrick Hosp.*, 10-2775 (La. 7/1/11), 65 So. 3d 1218, 1228-29.

As stated above, La. R.S. 13:3666(A) permits the trial court to tax additional compensation for "***witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science***[.]" (Emphasis added). Further, R.S. 13:3666(B) mandates the trial court to "determine the amount of the fees of ***said expert witnesses*** which are to be taxed as costs[.]" (Emphasis added). R.S. 13:3666(B)(1) provides the trial court shall determine the costs of "said expert" to be determined from "***the testimony of the expert*** relative to ***his time rendered*** and the cost of ***his services*** adduced upon the trial of the cause[.]" (Emphasis added).

16

We find nothing in the language of R.S. 13:3666 permits courts to tax additional compensation for any person other than "witnesses called to testify in court" as to their field of study or scientific experience. Although the work performed by the employees of the experts in the case was characterized as essential or vital to the ultimate conclusions and opinions of the experts, the plain language of the statute does not permit courts to award fees for work completed by anyone other than the expert witness who testifies in court pertaining to his or her area of expertise. Consequently, we adhere to this Court's ruling in *Luv N' Care*, *supra*, and conclude the trial court did not err in concluding invoices reflecting the charges for work done by persons other than the expert witnesses are not recoverable under La. R.S. 13:3666.

**CONCLUSION**

For the foregoing reasons, the trial court's judgment awarding expert witness fees in the amount $238,047.10 is hereby affirmed. Costs of the appeal are assessed to the defendant, CenterPoint Energy Resources Corp.

**AFFIRMED.**

17